Mr. Justice FIELD
 

 delivered the opinion of the court.
 

 The bill presents a case within the provisions of the first clause of the thirty-fifth section of the bankrupt act. That clause was intended to defeat preferences to a creditor, made by a debtor when insolvent or in contemplation of insolvency. It declares that any payment or transfer of his property made by him whilst in that condition, within four months previous to the filing of his petition, with a view to give a preference to a creditor, shall be void if the creditor has at the time reasonable cause to believe him to be insolvent, and that the payment or transfer was made in fraud of the provisions of the bankrupt act. And it authorizes in such case the assignee to recover the property or its value from the party who receives it.
 

 Under this act it is incumbent on the complainant, in order to maintain the decree in his favor, to show four things:
 

 1st. That at the time the conveyances to Toof, Phillips & Co. and Mahan were made the bankrupts were insolvent or contemplated insolvency;
 

 2d. That the conveyances were made with a view to give a preference to these creditors;
 

 3d. That the creditors had reasonable cause to believe the bankrupts were insolvent at the time; and,
 

 
 *47
 
 4th. That the conveyances were made in fraud of the provisions of the bankrupt act.
 

 1st. The counsel of the appellants have presented an elaborate argument to show that inability to pay one’s debts at the time they fall due,
 
 in
 
 money, does not constitute insolvency, within the provisions of the bankrupt act. The argument is especially addressed to language used by the district judge when speaking of the statement of the appellants in answer to one of the interrogatories of the bill, to the effect that at the time'the transfers were made they did not believe the bankrupts were able to pay their debts
 
 in money,
 
 but were able to do so on a fair market valuation of their property and assets. The district judge held that this was a direct confession of a fact which in law constitutes insolvency, and observed that “if the bankrupts could not pay their debts in the ordinary course of business, that is, in money, as they fell due, they were insolvent.”
 

 The rule thus laid down may not be strictly correct as applied to all bankrupts. The term insolvency is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning. But it is also used in a more restricted sense, to express the inability of a party to pay his debts, as they become due in the ordinary course of business. It is in this latter sense that the term is used when traders and merchants are said to be insolvent, and as applied to them it is the sense intended by the act of Congress. It was of the bankrupts as traders that the district judge was speaking when he used the language which is the subject of criticism by counsel.
 

 With reference to other persons not engaged in trade or commerce the term may perhaps have a less restricted meaning. The bankrupt act does not define what shall constitute insolvency, or the evidence of insolvency, in every case.
 

 In the present case the bankrupts were insolvent in both senses of the term at the time the conveyances in controversy were made. They did not then possess sufficient prop
 
 *48
 
 erty, even upon their own estimation of its value as given in their schedules, to pay their debts. These exceeded the estimated value of the property by over twenty thousand dollars. And for months previous the bankrupts had failed to meet their obligations as they matured. Creditors had pressed for payment without Success; their stock of goods had been levied on, and their store closed by the sheriff under an execution on a judgment against one of them. It would serve no useful purpose to state in detail the evidence contained in the record which relates to their condition. It is enough to say that it abundantly establishes their hopeless insolvency.
 

 2d. That the conveyances to Toof, Phillips & Co. were made with a view to give them a preference over other creditors hardly admits of a doubt. The bankrupts knew at the time their insolvent condition. A month previous they had made up a balance sheet of their affairs which showed that their assets were insufficient to pay their debts. They had contemplated goiug into bankruptcy in December previous, and were then pressed by numerous creditors for payment. Their indebtedness at the time exceeded $50,000, and except to Toof, Phillips & Co. they did not pay upon the whole of it over $500 during the previous fall and winter. Making a transfer of property to these creditors, under these circumstances, was in fact giving them a preference, and it must be presumed that the bankrupts intended this result at the time. It is a general principle that every one must be presumed to intend the necessary consequences of his acts. The transfer, in any ease, by a debtor, of a large portion of his property, while he is insolvent, to one creditor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the debtor can show that he was at the time ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him in such case, and not upon the assignee or contestant in bankruptcy.
 

 
 *49
 
 No such proof was made or attempted in this case. But, on the contrary, the evidence shows that the conveyances were executed upon the expectation of the bankrupts, and upon the assurance of Toof, Phillips & Co., that in consequence of them they would continue to sell the bankrupts goods ou credit, as they had previously
 
 done;
 
 and that no arrangement was made by the bankrupts with any other of their creditors, either for payment or security, or for an extension of credit.
 

 The fact that the title-bond was assigned, and the property for which it was given was conveyed to Mahan alone, and not to Toof, Phillips & Co., does pot change the character of the transaction. Mahan was a member of that firm, and the conveyance was made to him with the understanding that the sum mentioned as its consideration should be credited on the indebtedness of the bankrupts to them. Both of the bankrupts testified that such was the understanding at the time. The pretence that Mahan bought the lots as an investment on private account will not bear the slightest examination. It is in proof that the lots at the time were only worth $4000 at the outside, yet the consideration given was nearly $7000. Toof, Phillips & Co. might well have been willing to credit this amount on their claim against insolvent traders in consideration of obtaining from them the possession of property of much less value, but it is incredible that an individual, seeking an investment of his money, would be careless as to the difference between the actual value of the property and the amount paid as a consideration for its transfer to him.
 

 3d. From what has already been said it is manifest not only that the bankrupts were insolvent when they made the conveyances in controversy, but that the creditors, Toof, Phillips & Co., had reasonable cause to believe that they were insolvent. The statute, to defeat the conveyances, does not require that the creditors should have had absolute knowledge on the point, nor even that they should, in fact, have had any belief on the subject. It only requires that they should have had reasonable cause to believe that such was
 
 *50
 
 the fact. And reasonable cause they must be considered to have had when such a state of facts was brought to their notice in respect to the affairs and pecuniary condition of the bankrupts as would have led prudent business men to the conclusion that they could not meet their obligations as they matured iu the ordinary course of business. That such a state of facts was brought to the notice of the creditors is plainly shown. Chetlain, one. of the bankrupts, testifies that previous to the execution of the conveyances he had several conversations with Mahan respecting their finances, and told him the amount or near the amount of their indebtedness, and that they could not pay it. Mahan advised them to get extensions, and said that he would help them to get through. Chetlain also testifies that such was the state of the finances of the bankrupts that on one occasion, in conversation with Mahan, they offered to turn over to him their entire assets if he would assume their liabilities and give them a receipt, and that he declined the offer.
 

 It also appears in evidence that the levy by the sheriff upon the stock of goods of the bankrupts, already mentioned, which was made in January, 1868, caused a temporary suspension of their business, and that Mahan was in Augusta at the time and had an interview with the bankrupts on the subject of the levy.
 

 It also appears that about the last of December, 18.67, or the first of January, 1868, Toof, Phillips & Co. sent notes of the bankrupts which they held to an agent in Augusta for collection. The agent presented the notes for payment to the bankrupts and was told by them that they could not pay the notes at that time. The agent then wrote to Toof, Phillips & Co. that they had better look to their interests, as his conviction was that it was doubtful whether they would be able to collect their debts. Shortly after this Malian went to Augusta to look after the matter, and whilst there the conveyances in controversy were made.
 

 It is impossible to doubt that Mahan ascertained, while thus in Augusta, the actual condition of the affairs of the bankrupts. The facts recited were sufficient to justify the
 
 *51
 
 conclusion that they were insolvent, or at least furnished reasonable cause for a belief that such was the fact.
 

 4th. It only remains to add that the creditors, Toof, Phillips & Co., had also reasonable ground to believe that the conveyances were made in fraud of the provisions of the bankrupt act. This, indeed, follows necessarily from the facts already stated. The act of Congress was designed to secure an equal distribution of the property of an insolvent debtor among his creditors, and any transfer made with a view to secure the property, or any part of it, to one, and thus prevent such equal distribution, is a transfer in fraud of the act. That such was the effect of the conveyances in this case, and that this effect was intended by both creditors and bankrupts, does not admit, upon the evidence, of any rational doubt. A clearer case of intended fraud upon the act is not often presented.
 

 Decree affirmed.
 

 Mr. Justice BRADLEY was absent from the court when this case was submitted, and consequently took no part in its decision.