## Case No. 10,999.

In re PERRY et al.

[7 West. Jur. 379; 20 Pittsb. Leg. J. 184.]

District Court, E. D. Massachusetts. April Term, 1873.

BANKRUPTCY—PREFERENCES—PAYMENTS WHEN INSOLVENT—DISCHARGE—BAR—FAILURE TO KEEP PROPER BOOKS.

1. A trader who is insolvent and knows it, and pays in full or secures the debt of one creditor, may be presumed to intend to prefer that creditor.

2. This rule should not be adopted as a rigid and unvarying test of a technical fraud on the act under section 29 [14 Stat. 531].

3. A bankrupt is presumed to know the contents of his books, and if they show him insolvent just before he stops payment, some payments can always be pointed out which were preferences.

4. He "suffering" his estate to be taken by creditors, by failing to go into voluntary bankruptcy when his property is seized or attached by one or more creditors, is at best but a doubtful bar to a discharge.

5. Where it is customary with a firm to carry forward a large part of the firm's cash account from day to day on slips of paper, and the items are not recorded or fully shown on the account books at any time, so that creditors are prevented from acquiring information relative thereto, this amounts to a failure to keep proper books of accounts, and, being objected to at the time of an application by the bankrupts for a discharge, offers a sufficient reason to refuse the discharge.

[In the matter of Perry & Allen, bankrupts.]

Audley W. Gazzam and W. F. Slocum, for objecting creditors.

A. W. Boardman, for bankrupt.

LOWELL, District Judge. It is admitted that the defendants kept a shop at which they sold hats and furs at retail; that they began business with borrowed capital, and were insolvent for many months before they became technically bankrupt; indeed it would hardly be extravagance to say that they never were solvent. The objecting creditors have picked out of the defendants' books of account many of the payments made within four months before the petition was filed, and allege each of them to be an act of fraudulent preference, which must prevent the discharge of these bankrupts. I have had occasion more than once to confess the difficulty which I find in applying the law of preference. There is the best authority for saying that a trader who is insolvent, and knows it, and pays in full or secures the debt of one creditor, may be pre—

sumed to intend to prefer that creditor. Toof v. Martin, 13 Wall. [80 U. S. 40]. This agrees with the law which the lower courts have usually laid down. Yet, if this be adopted as a rigid and unvarying test of a technical fraud on the act under section 29, it is plain that few if any traders can ever obtain a discharge, because it will almost always be practicable to prove that any trader was insolvent before he stopped payment, and it must usually be presumed that he had knowledge of his own affairs, and all that an opposing creditor has to do is to select the last note or debt that has been paid, or the last but one or two or three, and the preference is a mere matter of inference. If the books of the bankrupt show insolvency and he is presumed to know the contents of his books, some payments can always be pointed out which were preferences. I have never been able to bring myself to believe that it was the intention of congress to adopt a standard of that sort, which would leave every merchant and tradesman at the mercy of a single objecting creditor. It is essential to the success of the bankrupt system that the assignee should be able to set aside preferences, and perhaps in aid of this result that the discharge of the debtor should be contingent on his conformity to the law in this respect as in all others. Still, when a trader has been going on in the regular course of his business without really intending to favor one creditor above another, it is rather a hard measure for him that a court or jury should decide after the fact, that because he has gone on too long he shall lose all benefit of the act. It may be that the courts can fairly give a slightly different construction to the "fraudulent preference" of section 29, which is to affect the discharge from that which obtains under the other sections (sections 35 and 39) relating to the avoidance of the payment or security. It seems to be the prevailing opinion that under these latter a mere neglect of the debtor to go into bankruptcy, when his property is seized or attached by one creditor, may be construed into a preference, as "suffering" his estate to be taken; but it does seem to me very doubtful if this can be a bar to the discharge, because in section 29, the word "suffer" is omitted, and the bankrupt is to lose his certificate if within four months he has "procured" his lands, &c., to be seized or sequestered. We must take this difference into account in seeking to discover the meaning of the other clause, "or if he has given any fraudulent preference contrary to the provisions of this act." Nor is it without significance as I pointed out in Re Locke [Case No. 8,439], that section 29 in one of its later changes undertakes to define a preference as being an act done by the debtor in contemplation of becoming bankrupt, which undoubtedly means a contemplation of actually taking the benefit of the statute. Buckingham v. McLean, 13 How. [54 U. S.] 150. There are several cases in which the law uses language which is identical, or nearly so, in different senses. This in prize and joint captors meant one thing in one part of the prize acts, and quite a different thing in another part of the same acts. The Selma [Case No. 12,647]. Or to take a more familiar example, "perils of the seas," has a totally different meaning in a policy of insurance from what is given it in the contract of affreightment, so that an underwriter is bound to indemnify against the loss arising from many acts of the master and crew of a vessel as being perils of the seas, which could not be relied on as such perils to exonerate a carrier whose contract contained the exception of sea perils. In this case the evidence does not show that the bankrupts intended to prefer any friend or any one else excepting by the sort of inference above mentioned, which may be ascertained from the books. They swear that they had no such intent, and the fact seems to be simply that they continued business after they should have known that they were insolvent, and of course paid rent notes and other debts as usual, sometimes to the objecting creditors, sometimes to others, as might chance. I do not find in the statute any discretion vested in me in such a case to grant or withhold the certificate as upon the whole I may deem most just, and can here only report my doubt whether this is a case for refusing it. The other objection taken by the plaintiffs must prevail. This is that the books of account were not kept properly. It was the habit of the partner who was the book-keeper of the firm to carry forward a large part of his cash account from day to day on slips of paper. I do not know that this practice can be wholly avoided, but if resorted to it should be so managed that the items can be recorded on the books at any time and thus give the creditors the necessary information of the bankrupt's transactions. In this instance something above $2,600 is accounted for by six items on the debtor side and three on the creditor side. Showing among other things, $2,000 borrowed of one person, and over $1,000 drawn out by each of the bankrupts. The evidence disclosed that these three items were made up of numerous lesser ones, made at different times, of which there remains no record, because the habit was to carry to a new memorandum only the footings of the old one. It is impossible therefore, for the assignee to tell from the books and memorandum together when or in what sums or for what purpose $2,100, or thereabouts, was received and drawn out. This sum, considering the scale of the bankrupts' business, was a considerable one, and I feel bound to say that the neglect to keep a permanent account of it, which could be verified and examined, seems to me to amount to a failure to keep proper books of account under the circumstances of the business. It is a question which must be decided in each case upon the facts as they appear, and not upon any

strict rule that such and such books and such and such entries are essential in all cases. Discharge refused.