## ANSHUTZ *v.* HOERR.

*(Circuit Court, W. D. Pennsylvania.* February 17, 1880.)

BANKRUPT ACT — "INSOLVENCY" DEFINED. — "Insolvency, within the meaning of the bankrupt act, means inability to pay debts in the ordinary course of business, and unless the debtor is able to pay such debts as they mature, *with money,* he is insolvent in the contemplation of said act, notwithstanding he may have lands and goods sufficient in time to meet all his liabilities."

SAME—FRAUDULENT JUDGMENT—EXECUTION—ACTION BY ASSIGNEE FOR PROCEEDS OF SALE.— An assignee in bankruptcy may maintain an ,action against a judgment creditor of the bankrupt, for the proceeds or value of property sold under a judgment of the state court, where such judgment was obtained in fraud of the bankrupt act, although the property was subject, at the time of the sale, to the lien of a valid execution, subsequent to that of the defendant.

ACTION BY ASSIGNEE—AMOUNT OF DEFENDANT'S LIABILITY.—In such action the defendant is only liable for the amount of the fund received by him, where part of the proceeds of the execution sale went to satisfy the claim of another creditor.

Opinion *sur* motion for a new trial, and on questions of law reserved.

*P. C. Lazear* and *D. T. Watson,* for plaintiff.

*R. B. Petty* and *J. F. Slagle,* for defendant.

ACHESON, J. This is an action on the case brought by Theodore F. Anshutz, assignee of Nicholas Wurzel, Sr., a bankrupt, against Philip Hoerr, to recover the value of certain personal property of the bankrupt, seized and sold by the sheriff of Allegheny county, by virtue of an execution from the court of common pleas No. 1, of said county, upon a confessed judgment in favor of Hoerr, alleged to be void under the bankrupt law, as giving an unlawful preference.

The case was tried before the late Judge Ketcham, and a verdict rendered for the plaintiff for the sum of $1,675, subject to the opinion of the court upon questions of law reserved. The defendant having moved for a new trial, that motion and the reserved questions were argued before me.

The ground mainly relied on in support of the motion for a new trial is the supposed error of the court in affirming the plaintiff's second point, which was in these words: "That

insolvency, within the meaning of the bankrupt act, means inability to pay debts in the ordinary course of business; and, unless the debtor is able to pay such debts as they mature, *with money*, he is insolvent in the contemplation of said act, notwithstanding he may have lands and goods sufficient, in time, to meet all his liabilities."

Nicholas Wurzel, Sr., was a *merchant*, and, therefore, as applicable to him, the foregoing point contains an accurate statement of the law. *Hardy* v. *Clark*, 3 B. R. 387; *Webb* v. *Sachs*, 15 B. R. 168; *Foot* v. *Martin*, 13 Wall. 47. In the last cited case the judge below charged the jury that, "if the bankrupts could not pay their debts in the oridinary course of business, that is, in money, as they fell due, they were insolvent." This instruction was approved by the supreme court as applied to traders and merchants.

It seems to me the reasons assigned for a new trial are insufficient, and the motion is overruled.

In order properly to understand the questions of law reserved, it is necessary to state the following facts:

Philip Hoerr's judgment against Wurzell was for the sum of $790.96. It was entered and execution issued thereon December 22, 1875. On the same day, but at a later hour, August Klein entered judgment and issued execution against Wurzell for $1,500. The day following, Lindsay, Sterrett & Co. entered judgment and issued execution against Wurzell for $2,200. Under and by virtue of these three executions the sheriff seized and sold the personal property, consisting mainly of his stock of merchandise of the defendant Wurzell. The amount realized by the sheriff's sale was $1,301.98, which the sheriff appropriated and paid as follows, to wit:

| | |
|---|---:|
| To costs, | $223 90 |
| " Philip Hoerr, | 803 46 |
| " August Klein, | 274 62 |
| | $1,301 98 |

The assignee of the bankrupt claims that the Klein judgment and execution were in fraud of the bankrupt act, and

v.1,no.8—38

he brought a suit, now pending in this court against Klein, to set aside the alleged unlawful preference acquired by him. But it is conceded on all hands that the judgment and execution of Lindsay, Sterrett & Co. were valid and unimpeachable.

At the trial of this case the defendant, Hoerr, prayed for the following instructions, viz.:

"4. That the levy and sale by the sheriff having been made before commencement of proceedings in bankruptcy upon other executions, issued upon judgments which were unquestionably good and valid under the bankrupt law, the said sale cannot be impeached; and the only claim the assignee could make would be to the fund realized from the sale, and the defendant would only be liable for the amount of the fund received by him.

"5. That the evidence showing that the execution of Lindsay, Sterrett & Co. would have been entitled to the fund produced by the sheriff's sale, if execution of defendant was set aside, the assignee could have no interest in said fund, and cannot recover.

"6. That the sale of the sheriff having been regular, and having taken place before proceedings in bankruptcy were commenced, the assignee should have made his claim to the state court, which had jurisdiction of the fund, and the money having been distributed according to law in said court, its judgment cannot now be impeached.

"7. That the declaration in this case claims the value of the goods as damages, and the said goods having been sold by due process of law, under a judgment good under the provisions of the bankrupt law, there can be no recovery."

The questions raised by these four points are the questions of law reserved. The verdict of the jury establishes that Philip Hoerr's judgment and execution were fraudulent, as an unlawful preference under the bankrupt law. Now, it is well settled that a security or priority in fraud of the bankrupt act, gained by a suit in a state court, has no better claim to protection than a payment by the debtor himself, and if the property of a bankrupt has been seized and sold under process from a state court, issued on a judgment which is void

ANSHUTZ v. HOERR. 595

as a preference, the assignee may maintain an action against the creditor to recover the proceeds of sale in his hands, or the value of the property. *Showan* v. *Wherrill*, 7 How. 627; *Clarion Bank* v. *Jones*, 21 Wall. 325. These cases, it seems to me, authoratively determine that the assignee of Nicholas Wurzell, Sr., was not concluded by the distribution made in the state court.

But it is strenuously argued that as the execution of Lindsay, Sterrett & Co. was confessedly good, and would have taken the fund produced by the sheriff's sale had Hoerr's execution been set aside or excluded, the assignee had no interest in the fund. To sustain this position the defendant relies upon the cases of *Wilcocks* v. *Waln*, 10 Ser. & Raw. 380; *Manufacturers' & Mechanics' Bank* v. *Bank of Pa.* 7 Watts & Ser. 335; *Schultz's Appeal*, 1 Barr. 251; and *Tomb's Appeal*, 9 Barr. 61. The principle of these cases is that the last of three or more liens, in the order of their succession, being superior to the first but inferior to the second, gains no practical advantage from its priority, because it could not be preferred to the first without also being preferred to the second, to which it is subsequent. And the argument here is that the assignee could not have taken the fund from Lindsay, Sterrett & Co., because their execution was valid; and as he was not entitled to it as against them, he could not prevent the application of the fund to Hoerr's execution, which was prior to that of Lindsay, Sterrett & Co. In other words, it is claimed that the fund raised by the sheriff's sale belonged to one or the other of these execution creditors, to the exclusion of the assignee.

But, as applicable to the case before us, we cannot accept as sound the defendant's reasoning, or adopt the conclusion to which it leads. It is not now necessary to consider what would have been the proper disposition of the fund realized by the sheriff's sale had the assignee been a claimant in the court of common pleas. He was not bound to go into that court, and, as we have seen, is not concluded by the distribution there made. The case in hand is not a contest for priority between lien creditors. The assignee recovers the money

in the defendant's hands by the assertion of a superior title conferred upon him by the bankrupt law. The defendant is in no better position than if the money had been paid to him directly by the bankrupt in fraud of the law. Therefore, as against the assignee, he cannot retain the money. Moreover, Lindsay, Sterrett & Co., it will be perceived, having taken nothing by their execution, are thrown upon the general assets of the bankrupt, and justice to the general creditors requires that the fund in the defendant's hands—the fruit of an unlawful execution—shall come to the assignee for distribution *pro rata* among the creditors.

Upon the questions of law raised by the defendant's fifth, sixth and seventh points the opinion of the court is with the plaintiff.

The verdict of the jury was 'for the value of the goods sold by the sheriff. But clearly the defendant's liability does not extend so far. His writ did not authorize the sheriff to sell more of the bankrupt's goods than was necessary to satisfy that execution. In fact the sheriff sold by virtue of three writs of *fi. fa.*, and one of these was unimpeachable. Part of the proceeds of sale went to the second execution creditor, against whom the assignee is prosecuting a suit to recover the money so paid to him. The extent of the defendant's liability is indicated in his fourth point. The sheriff applied to the costs of his writ $128.45, and to his judgment $803.46, or in all $931.91. The plaintiff, therefore, is only entitled to recover in this action the last mentioned sum, with interest from the time of payment to the defendant, March 6, 1876. Upon that basis the true verdict, on May 30, 1879, would have been for the sum of $1,112.62.

And now, to-wit, February 17, 1880, it is ordered that judgment be entered upon the questions of law, reserved in favor of the plaintiff, for the sum of $1,112.62, with interest from May 30, 1879, *non obstante verdicto.*