## MITCHELL v. MITCHELL.

1. FINDINGS OF FACT—INSOLVENCY—ASSIGNMENT.—Where there is testimony to sustain the findings of fact by the Circuit Judge (overruling the master) that a mortgagor was insolvent, that the mortgage covered practically his whole estate, and that it was not given in good faith for the sole purpose of securing the debt, but as an intended transfer to one creditor to the exclusion of others, the Circuit Judge will be sustained in such findings, and the mortgage is invalid under the assignment laws.

2. IBID.—FRAUDULENT PREFERENCES.—Where an indebtedness from husband to wife ran on for years without written evidence to her of such indebtedness, but the husband, when pressed by another creditor, gave bond to his wife, including items for thirteen years past, with ten per cent. interest, and secured the same by mortgage of his entire estate, which was of value less than this bonded debt, this court declined to interfere with the finding of the Circuit Judge, that this bond and mortgage were void under the Statute of Elizabeth, because an undue preference.

Before HUDSON, J., Lexington, September, 1893.

Action by Sarah B. Mitchell against John A. G. Mitchell, U. X. Gunter, H. D. Derrick, assignee, T. B. Kernaghan, N. B. Dial, and Ruth B. Dial, commenced January 12, 1893. The Circuit decree was as follows:

This is an action brought by Sarah B. Mitchell, wife of J. A. Jeter Mitchell, against her husband, to foreclose certain mortgages she holds against his real estate. To this action certain judgment and mortgage creditors of the said J. A. J. Mitchell are made parties defendant. To the suit to foreclose, these defendants claim against the plaintiff that her mortgage, dated 3d November, 1887, given to secure a bond of that date for the sum of $5,525.34-100, is as against the defendant judgment creditors fraudulent and void: First, upon the ground that it is

tantamount to an assignment under section 2014 of the General Statutes, and gives undue preference to one creditor over all others.   Secondly, that if it be not an assignment within the purview of the said act, it is, nevertheless, an undue preference, and fraudulent as to these judgment creditors.

The issues of law and fact were referred to J. Brooks Wingard as special referee, with directions to report to the court his findings of fact and conclusions of law.   Upon the coming in of that report, exceptions thereto were filed by the said judgment creditors, and the cause was heard before me upon exceptions to said report.   The special referee sustained this mortgage of the husband to the wife as a valid security, and recommended the foreclosure and sale of the property covered by that and the other mortgages in the case.   Upon the hearing of the cause I became satisfied that the aforesaid bond of November 3, 1887, was excessive in amount, and should be greatly reduced as was disposed, and so announced myself to sustain the report of the referee except in this particular; but a more careful consideration of the testimony and examination of the authorities has satisfied me that this is an erroneous view.

The question first to be determined is whether J. A. J. Mitchell at the time he gave this bond to his wife was insolvent? This question was not decided by the referee.   I am satisfied from the testimony that at that time he was insolvent, and that his insolvency was known to himself and also to the plaintiff. He owned about $250 worth of personal property and two tracts of land—the home tract, consisting of 350 acres, which he valued at $18 per acre, and another tract of 400 acres, valued by himself at $1,800.   These valuations are very full, but even at this valuation of his property his debts exceeded it.

The bond to his wife is made up of various amounts of money which he is said by himself and his wife to have collected as her agent from her various sources of property and income. They were married in 1872.   In the year 1874 he collected for her an interest in taxes amounting to $600.   In 1881 he collected for her as executrix of A. S. Lark's estate $267.67–100; he also collected of her interest in said estate $997.16–100.   From 1881 up to the date of the said bond he collected annually the rent of

his wife's Mudlick plantation, in the County of Newberry. For none of these amounts did he give any written acknowledgment to his wife nor any written promise to pay. The indebtedness was not evidenced by any written instrument until 1887, when he gave the bond and mortgage aforesaid. On every amount which he charged against himself as having collected for his wife, he calculated the annual interest at the rate of ten per cent. These different amounts, with interest aforesaid calculated up to the 3d of November, 1887, made the sum total of the said bond. Not being satisfied with having given the mortgage aforesaid upon his home place of 350 acres to secure the bond aforesaid, on the 10th of May, 1889, he extended this lien by giving a mortgage upon the 400 acres of land to secure the same debt.

On the 18th day of October, 1889, he gave to Abram Jones a mortgage to secure the payment of $700 on the 350 acres of land aforesaid. On the 5th of February, 1892, this bond and mortgage was transferred to Mrs. Mitchell. On the 28th of February, 1885, the defendant, J. A. J. Mitchell, executed and delivered to U. X. Gunter his notes for      dollars, secured by mortgage upon 400 acres of land aforesaid, which notes and mortgages amounted on 1st of October, 1893, to the sum of $1,092.67–100. On the 7th of January, 1890, Mitchell executed and delivered to U. X. Gunter his notes for      dollars, secured by mortgage upon the 400 acres of land aforesaid, which notes and mortgage amounted on 1st of October, 1893, to the sum of $1,092.67–100. On the 7th of January, 1890, he gave to his wife the note for $500, and secured the same by a mortgage on the aforesaid 400 acres of land. The plaintiff, Mrs. Mitchell, has become the owner of both the Jones and the Gunter mortgages.

The judgments of the defendant judgment creditors amount to several thousand dollars. The exact amount is not given by the referee, but I presume will not be less than $4,000. In addition to these notes he is also indebted as guardian of his two minor children, by his first wife, in amounts not yet ascertained, but which will probably each equal the amount recovered against him by his married daughter, Mrs. N. B. Dial, of whom he is likewise guardian. In view of these facts there can be no question that on the 3d of November, 1887, J. A. J. Mitchell

realized the fact that he was totally insolvent, and then conceived the purpose of saving out of his estate to his present wife the large amounts of money aforesaid. In determining whether this is undue preference or not, I deem it unnecessary to cite the numerous cases which hold that a debtor in failing circumstances has a right to secure one creditor in preference to another, but he has no right to cover up his property by such securities as to defeat, hinder, and delay the creditors who are unsecured; in other words, he has no right to give a preference which is undue in the sense of the Statute of Elizabeth.

The present case is on all-fours with the case of *Mann* v. *Poole*, 40 S. C., 1. The only difference between the conduct of J. T. Poole towards his wife and daughters, and the action of J. A. J. Mitchell in regard to his wife, is that, in about ninety days after securing the claims of his relatives, Poole made a general assignment for the benefit of his creditors. This Mitchell did not do, and could not have done, because he had no property to assign, other than the property which he had so heavily mortgaged. One other distinction may be mentioned, which is, that there was no question as to the *bona fide* indebtedness of Poole to his wife and daughters. The *bona fides* of Mitchell's indebtedness to his wife is gravely questioned by the defendants in this case, and not without reason. I hold, therefore, that the bond and mortgage given by Mitchell to his wife on the 3d of November, 1887, is as to the defendant judgment creditors an undue preference, and invalid.

It is adjudged, therefore, that the report of the referee in his findings of fact and conclusions of law touching this security be overruled. It is, therefore, ordered, adjudged, and decreed, that the U. X. Gunter mortgage, the Abram Jones mortgage, and the mortgage securing $500 to Mrs. Mitchell, being valid securities, be foreclosed, and the equity of redemption be barred. It is ordered, adjudged, and decreed, that there was, on the 1st of October, 1893, on the Jones mortgage, due the sum of $776.59, on the U. X. Gunter mortgage $1,092.67, on the $500 mortgage the sum of $650, and that for these amounts in the aggregate the plaintiff is entitled to judgment. It is further

ordered, adjudged, and decreed, that the lands described in the complaint be sold by the clerk of the court, &c.

Plaintiff appealed on the following grounds:

1st. Because his honor, the Circuit Judge, erred in overruling so much of the report of the referee herein as sustains the bond of the defendant, John A. J. Mitchell, to the plaintiff, in the penalty of $11,050.68, conditioned for the payment of $5,525.34, and secured by mortgages of real estate. 2d. Because his honor erred in not allowing the said bond and mortgages to stand as valid securities, at least to the extent of $3,150.14, with interest at seven per cent. per annum on each item of money embraced in the sums borrowed by the said J. A. J. Mitchell from the plaintiff, and constituting the indebtedness secured by the bond, from the day of the receipt by that defendant of each item to the date of the said bond, and interest thereafter according to the terms of the bond. 3d. Because his honor erred in deciding that the execution and delivery of such said bond and mortgages amounted to an assignment of the said J. A. J. Mitchell's estate, within the inhibition of the statute laws of the said State. 4th. Because his honor erred in holding that the said J. A. J. Mitchell was insolvent at the date of the mortgage of 3d day of November, 1887, or at the date of the mortgage of 10th May, 1889. 5th. Because his honor erred in holding that the said J. A. J. Mitchell knew or believed that he was insolvent on the said 3d day of November, 1887, or on the said 10th day of May, 1889. 6th. That his honor erred in not holding that the said bond and the mortgages to secure it were executed merely as securities for a valid and subsisting debt from the said J. A. J. Mitchell to the plaintiff, appellant. 7th. Because his honor erred in holding that the said J. A. J. Mitchell is, or ever has been, since the beginning of the year 1887, indebted to his two other daughters besides Mrs. Dial. 8th. Because his honor erred in holding that the said J. A. J. Mitchell either knew or believed, at any time in the year 1887, that he was a debtor to Mrs. Dial. 9th. Because his honor erred in holding that the said bond and the two mortgages to secure its payment were fraudulent—or that any one of them was fraudulent—as in-

tended to delay, hinder, or defraud other creditors of the said
J. A. J. Mitchell. 10th. Because his honor erred in not sus-
taining all of the referee's findings of fact and conclusions of law.

*Mr. J. F. J. Caldwell,* for appellant.

*Messrs. Meetze & Muller* and *N. B. Dial,* contra.

November 9, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. This action came on for trial before his
honor, Judge Hudson, at the Fall Term, 1893, of the Court of
Common Pleas for Lexington County, in this State. His honor
filed his decree on the 23d day of November, 1893. All parties
acquiesce in the decree, except that the plaintiff has appealed
from the findings of fact and conclusions of law therein, whereby
her bond, in the penalty of $11,050.64, conditioned to pay
$5,525.32, with interest thereon from the 18th February, 1887,
at ten per cent. per annum, together with the two mortgages
on 754 acres of land given to secure said bond, were declared
invalid, being held obnoxious to both section 2014 of what is
known as our Law on Assignments, and also to the Statute of
Elizabeth. She has presented ten grounds of appeal in as-
signing such errors, but inasmuch as both the decree and these
grounds should appear in the report of this case, we have not
deemed it necessary to reproduce them here.

It may be better that we should briefly outline a history of
this contest, as set out in the "Case." It seems that the defend-
ant, John A. J. Mitchell, was twice married. His first wife died
about 1869, and he married again in 1872. By his first mar-
riage he had four children, each of whom inherited an estate in
the State of Tennessee, through their mother. These children
being minors, their father became their guardian, and received
their respective estates. He was also one of the executors of
the will under which his children derived their estates. Mr.
Mitchell also received for his present wife some money sent to
her from the State of Texas, in 1874, and also her share of the
estate of her father, the late Andrew Lee Lark, of Newberry
County, in this State. The plaintiff, as part of the estate de-
rived from her father, purchased at his estate sale a plantation

of land known as "the Mudlick place." The rents from these lands were all received by Mr. Mitchell with the consent of his wife. Mr. Mitchell being indebted to one Jones in the sum of $720, secured such debt by a mortgage on his lands. The plaintiff purchased this mortgage. Mr. Mitchell was also indebted to one Gunter for about $800, which debt he secured by a mortgage of his lands. This mortgage is now owned by the plaintiff.

Some time in 1886, in the summer, that child of Mr. Mitchell who had intermarried with the defendant, Nathaniel B. Dial, sought a settlement at the hands of her father as her guardian. It would seem from his (Mitchell's) testimony that from some cause, he conceived the idea that he owed his ward nothing, though he says in his testimony that he told her he was willing to pay $750 in full settlement. This settlement she declined. A suit was threatened, and when this was done, he used some language it would have been well if he had left unsaid. His language here referred to was, if you sue, "the largest pole will knock down the persimmon." The defendant, Mitchell, not long after this, made up an account with his wife, including therein items of indebtedness as far back as thirteen years, and so on down to the date of his reckoning of the account in February, 1887. It appears to be a fact in the case that Mr. Mitchell had given no note to his wife all these years. On the 3d November, 1887, he executed a bond to the plaintiff in the penalty of $11,050.64, conditioned to pay $5,525.32, with interest thereon at ten per cent. per annum from 17th February, 1887. Mrs. Dial put her claim in judgment against him in 1892, first having obtained judgment in the courts of the State of Tennessee for $1,407.90. The other defendants put their claims in judgment in 1892.

Under this condition of things, the plaintiff brought her action to foreclose the mortgage she had purchased from Jones, also that purchased from Gunter, and also that executed 3d November, 1887. The defendants admitted the validity of the Jones and Gunter mortgages, but stoutly contested the plaintiff's right to foreclose the mortgage executed 3d November, 1887, on two grounds: *first*, that it was invalid under the as-

31—42

signment laws of this State, and *second,* that it was made to hinder, delay, and defraud creditors; also denying the *bona fides* of the indebtedness represented by the bond in the penalty of $11,050.64. By an order therefor, the issues of law and fact were referred to J. Brooks Wingard, Esq., as special master. He heard the testimony which is reproduced in the "Case." By his report, he reduced the amount due the plaintiff under the bond and mortgage of 3d November, 1887, by more than $2,000, but, so reduced, he sustained its validity, and recommended a judgment foreclosing the mortgage. Exceptions were taken to that report by the other defendants. The case, as before stated, came on to be heard by Judge Hudson, who sustained such exceptions, and decreed accordingly. The appellant, in the able argument submitted by her counsel, Mr. Caldwell, treats the decree of Judge Hudson as raising two questions: *First.* That her mortgage of 3d November, 1887, was invalid under the assignment law of this State. *Second.* That her said mortgage was invalid under the statute of 13 Elizabeth, of force in this State. And we propose to adopt that method of testing the decree of Judge Hudson in the light of the exceptions thereto by appellant.

I. Was Judge Hudson in error in holding the mortgage in question invalid under the assignment laws of this State? The appellant admits that, if the mortgage amounts to an assignment of the whole of debtor's estate, actually or practically, and, also, that if such security be not given in good faith to secure the payment of a debt, and for the sole purpose of securing that debt, but as a transfer of debtor's estate to one creditor, there being other creditors left unsecured, such mortgage is invalid under our law governing assignments. It will be readily seen that this conclusion necessarily involves several propositions: *First.* The debtor must be insolvent. *Second.* The security must cover the whole of such insolvent's estate, actually or practically. *Third.* It must be given in good faith to secure a debt, and for the sole purpose of securing that debt. *Fourth.* It must not be a transfer of debtor's whole estate to one creditor to the exclusion of other creditors. The Circuit Judge found that all these propositions entered into

this mortgage executed by Mitchell to the plaintiff, for he found that Mitchell was insolvent; that Mrs. Mitchell knew of this insolvency; that the mortgage given covered his whole estate; that it was not given to secure a debt in good faith owing the plaintiff; and that it was a transfer of his whole estate to his wife for the purpose of excluding his other creditors therefrom.

The next step on our part is to see if these findings of fact have any testimony to support them, or is the overwhelming weight of the testimony opposed to them. It is almost needless to repeat the rule of this court on this branch of the law; we will not undertake to reverse a decree when there is testimony to support the findings of fact by the judge, sitting as a chancellor, or in case the overwhelming weight of the testimony does support his findings. It is earnestly insisted that in this case such findings of the Circuit Judge are wanting in both these particulars. In deference to these suggestions, we have made a careful examination of the testimony, and will now give the reasons for our conclusions. Who is an "insolvent" under our laws? Our own court, in *Akers* v. *Rowan*, 33 S. C., 470, have approved the meaning ascribed to the term "insolvency," in its general and popular meaning, viz: "the insufficiency of the entire property and assets of an individual to pay his debts," and, in doing so, approve the definition given by Field, Justice, in *Toof* v. *Martin*, 13 Wall., 47, of such general and popular meaning. With this understanding of this term, we will answer the question as to testimony in this case establishing the insolvency of John A. J. Mitchell, on the 3d of November, 1887.

Mr. Mitchell, in his testimony, says he was possessed of $250 of personal property and $8,100 was the value of his landed estate. He was thus the possessor in the aggregate of $8,350 worth of property, real and personal. His indebtedness was as follows:

The debt set up by his wife on her bond and mortgage..$5,525 32
Int. from 17 Feb., '87, to 3d Nov., '87, at 10 per cent. 411 36
The debt he owed Dr. F. G. Fuller.......... ..... ...... 1,000 00
The debt he owed Mrs. Dial...,.....,.......,,....,,........ 800 00

The debt he owed his other three children, at $800 each  2,400  00

The Jones mortgage debt (the oldest mortgage)........    720  00

The Gunter mortgage debt (dated in 1885).............    800  00

The three debts now in judgment, about................    600  00

Aggregate of indebtedness on 3d Nov., 1887.....$12,256  68

Now, by deducting the $8,350.00 from the $12,256.68, we will find he owed $3,906.68 more than his property, if sold at his own valuation, would pay. Is not this insolvency?

Now, as to the second proposition. On the 3d November, 1887, the date Mitchell gave his wife the mortgage, he owed the Jones mortgage $720; the Gunter mortgage $800; add to these his wife's mortgage debt, $5,936.68, aggregating for the mortgage debts $7,456.68. But he had $8,100 worth of property. Take from this the homestead exemption of $1,000, leaves $7,100 of property covered by mortgage liens of $7,456.68, and what was then left for his other creditors? But if we admit that he would not have been entitled to any homestead, the pitiful sum of $643.32 would have been left for his other creditors. These calculations are based upon the estimate of his property by Mitchell himself. This estimate is referred to by the judge in his decree as *"very full."* So, that it appears that the Circuit Judge's finding that this mortgage to the plaintiff actually, or practically, covered his entire estate, thereby leaving nothing to pay the demands of the defendants and other creditors, is fully sustained.

Was this security given in good faith to secure a debt, and for the sole purpose of securing a debt? The Circuit Judge has found as a fact that it was not. No doubt his honor had in his mind, in this connection, the sensitiveness of a Court of Equity in scrutinizing transactions of a business character between a husband and wife, parent and child, as the case may be. It was possible, in looking over the items in the account between himself and his wife, that Mitchell made out in February, 1887, the Circuit Judge may have remembered the case of *Bridgers* v. *Howell*, 27 S. C., 425, decided in 1887, when the court held that the earnings of the wife by her personal services were decided to be those of the husband, and remem-

bered that in December of that year, 1887, the legislature of this State (19 Stat., 819,) enacted that not only such earnings from her personal services, but also *her income*, shall be her own separate estate. He saw from the testimony that Mitchell was determined, as appeared from his own statement, in August, 1886, that, if his daughter, Mrs. Dial, sought to test her rights in the courts to her estate, not derived through her father, but from her grand-father's estate that had passed into Mitchell's hands as her guardian, that in such a contingency "the longest pole should knock down the persimmon;" he saw he was then insolvent, which fact was well known to his wife; that Mitchell had included in such bond items of indebtedness for more than $2,000 (inclusive of interest thereon); that by his not excepting to the report of the special master, which so found, both he and his wife admitted it to be true; and together with other circumstances, from all this testimony we cannot say his honor erred in such finding.

Next, was it in fact a transfer of his property to one creditor to the exclusion of other creditors? On the 3d day of November, 1887, as we have before seen, Mitchell owed $12,256.68, and he had $8,100 liable in law to the payment of such debts. By adding the mortgage of his wife given on that day to those he already had given, it will be seen he owed as liens on such estate, $7,456.68. When his assets of $8,100 were reduced by his homestead exemption of $1,000, he only had property valued at $7,100 to pay the liens thereon of $7,456.68. Was not this last mortgage for $5,936.68, therefore, a transfer of his property to one creditor to the exclusion of his other creditors? The Circuit Judge so found, and in the light of the testimony here we cannot reverse this finding. So, therefore, these propositions being accepted as true, can there be any doubt but that when Mitchell gave this mortgage to his wife it amounted to an assignment under section 2014 of our General Statutes (now section 2146, 1 Rev. Stat.), whereby Mitchell gave a preference to his wife, and on that account was invalid?

II. But was this mortgage invalid, because it was given to hinder, delay, and defraud his creditors, by Mitchell? The Circuit Judge so found. The language of the decree on

2    this point is: "In view of these facts, there can be no question that on the 3d of November, 1887, J. A. J. Mitchell realized the fact that he was totally insolvent, and then conceived the purpose of saving out of his estate to his present wife the large amounts of money aforesaid (this bond). In determining whether this is an undue preference or not, I deem it unnecessary to cite the numerous cases which hold that a debtor in failing circumstances has a right to secure one creditor in preference to another, but he has no right to cover up his property by such securities so as to defeat, hinder, and delay the creditors who are unsecured; in other words, he has no right to give a preference which is undue in the sense of the Statute of Elizabeth. The present case is on all-fours with the case of *Mann* v. *Poole*, 40 S. C., 1. * * * The only difference between the conduct of J. T. Poole towards his wife and daughters [grand-children] and the action of J. A. J. Mitchell in regard to his wife, is that in about ninety days after securing the claims of his relatives, Poole made a general assignment for the benefit of his creditors. This Mitchell did not do, and could not have done, because he had no property to assign other than the property which he had so heavily mortgaged. One other distinction may be mentioned, which is, that there was no question as to the *bona fide* indebtedness of Poole to his wife and daughters [grand-children]. The *bona fides* of Mitchell's indebtedness to his wife is gravely questioned by the defendants in this case, and not without reason. I hold, therefore, that the bond and mortgage given by Mitchell to his wife on the 3d of November, 1887, is, as to the defendant-judgment creditors, an undue preference and invalid."

Before passing away from this quotation from the decree, so far as reference is there made to the character of the indebtedness of Mitchell to his wife not being *bona fide*, we desire to say that, under the uncontradicted testimony of the probate judge of Newberry, and of Mr. Mitchell here, there can be no question that Mrs. Mitchell did have an estate derived from her father, the late Andrew Lee Lark, which consisted in money and lands, both of which passed under the control of Mr. Mitchell for his wife. Nor, further, can there be a doubt under this

testimony that Mrs. Mitchell derived other money from Texas. If, therefore, the Circuit Judge meant to impugn the *bona fides* of these sources of property in the hands of Mitchell for his wife, we cannot consent to such a conclusion. If, however, the Circuit Judge, looking to the date and the *amount* included in the bond secured by the mortgage executed in November, 1887, meant to refer to the inclusion in said bond of some items of indebtedness which were objected to, as well as the interest at ten per cent. per annum on all the items of the account, and to disapprove of the same, we cannot say, under the testimony here, that his criticism was unfounded.

Referring to the argument for appellant, we find that he admits that "those statutes [Statutes of Eliz.] were enacted for two purposes, one of which is to prevent the debtor from enjoying property while pretending to convey or transfer it to another, and the other of which is to prevent the debtor from transferring or encumbering property in order to escape a debt. The case of *Smith* v. *Henry*, 2 Bail., 118, belongs to the first class. The case of *Lowry* v. *Pinson*, *Ibid.*, 324, belongs to the second class." We agree with so much of the argument of the appellant, on this branch of the case, as holds that a *bona fide* conveyance or mortgage is not interdicted under the laws of this State, including the Statute of Elizabeth, which is of force here; that the presumption of fraud does not arise from the mere act of encumbering his property; that there must appear some proof either of his arrangement to keep what he pretends to convey, or some proof—satisfactory proof—that he is parting with his property in order to evade a creditor; that under our assignment laws as well as the Statute of Elizabeth the question is one of intention.

Let us look at the testimony to see if the Circuit Judge is sustained in his conclusion here assailed. If the debtor did anything by this mortgage to have it set aside as invalid by his creditors, it was under the second clause, namely, "conveying or encumbering his property in order to escape a debt." Does the testimony warrant the finding of the Circuit Judge in this view? As before remarked, we agree to the findings of fact that Mitchell was not only an insolvent on the 3d day of No-

vember, 1887, but that his wife, the plaintiff, well knew this fact. It appears from Mitchell's own testimony that his wife allowed him to use her money and the rents from the lands for many years without even a note to evidence this fact; that he had encumbered his whole real estate by mortgages, and still not a word was said or an act done to protect his wife from his insolvency. But when his daughter wanted her property, then, and not till then, did a word or act proceed from Mitchell in behalf of his wife. It was then that that ugly expression, "if you go to law, the longest pole will knock down the persimmon," occurred. Then it was that accounts thirteen years old and downwards to the date of the account taken 17th February, 1887, was made to bear interest at ten per cent. per annum. Then it was that an estate estimated by himself at the value of $8,100, was covered by mortgages in amount just six hundred and odd dollars less than this estimated value of his whole estate. Was this transaction *bona fide?* The Circuit Judge said it was not. Was it an effort by Mitchell to encumber his whole estate by a mortgage, so as to hinder, delay, and defeat his other creditors? The Circuit Judge said it was. And now, in conclusion, it only remains for us to say that in the light of this testimony we cannot reverse the Circuit Judge.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, and the cause be remanded to the Circuit Court to enforce the Circuit decree.