JOHN NAYLON & CO. et al. v. CHRISTIANSEN HARNESS MFG. CO.

CHRISTIANSEN HARNESS MFG. CO. v. JOHN NAYLON & CO. et al.

(Circuit Court of Appeals, Sixth Circuit. January 16, 1908.)

Nos. 1705, 1706.

BANKRUPTCY—ACTS OF BANKRUPTCY—TRANSFERS WITH INTENT TO PREFER CREDITORS.

Where a corporation, at a time when its assets were much less in value than the amount of its debts, and its insolvency was or should have been known to those in charge of its business and within four months prior to the filing of a petition in bankruptcy against it, made payments to certain creditors under circumstances which indicated a probability that they would result in preferences, a finding by a referee, approved by the District Court, that such payments were made with intent to prefer the creditors receiving them, and constituted acts of bankruptcy within Bankr. Act July 1, 1898, c. 541, § 3a (2), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], will not be reversed on appeal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 929.]

Cross-Appeals from the District Court of the United States for the Southern Division of the Eastern District of Michigan.

H. B. Graves, for Christiansen Harness Mfg. Co.

H. Helfman, for Naylon and others.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. These are appeals taken from an order of the District Court adjudging the Christiansen Harness Manufacturing Company bankrupt. The first of these appeals is by the al-

leged bankrupt; the other is a cross-appeal by petitioning creditors. This cross-appeal is rested upon the ground that the court below, although it made the adjudication prayed, yet in its opinion held that some of the grounds urged by the petitioners therefor were not sustained. The theory of the cross-appellants seems to be that, if this court should not support the adjudication upon the ground on which the District Court based it, the taking of the cross-appeal would enable us to review the opinion of the District Court on the issues which that court found against them, and if its opinion should be held erroneous, then to affirm the order of the court below on the grounds which it rejected. We will suspend the consideration of the cross-appeal for the present.

The alleged bankrupt had for some time been engaged at Detroit in manufacturing and selling articles of the kind indicated by its title. It had become embarrassed, and had been failing to meet its obligations as they became due for more than four months before the filing of the petition by its creditors on December 26, 1905. The grounds on which the adjudication was prayed were three in number, and in the order in which we shall notice them, as follows: First. That the alleged bankrupt had within the last preceding four months, while insolvent, transferred portions of its property to some of its creditors with intent to prefer them. Second. That it had within that time, viz., on December 4, 1905, while insolvent, given a power of sale of its stock of goods and other assets to one Wasey, and also a mortgage or power of sale of its assets to the Commercial National Bank, a principal creditor of the bankrupt, both of which instruments are alleged to have been given with the intent to prefer the said bank. Third. That it had, while insolvent, transferred its property with intent to defraud its creditors. The referee, upon his finding of facts and conclusions of law, held that the respondent should be adjudicated bankrupt upon both of the first two grounds. At least, we so construe his report, although the District Judge in his opinion seems to have understood it differently. The District Court however held adversely to the petitioners in respect to the second, and placed the adjudication upon the first, ground. Clause (2) of the third section of the Bankrupt Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], declares it to be an act of bankruptcy when the person has "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors." To fulfill these conditions three things must concur: The bankrupt must have transferred some part of his property to his creditors; he must have been insolvent at the time; and he must have intended, in doing it, to prefer those creditors over others. The record shows beyond doubt that the alleged bankrupt transferred some of its property to some of its creditors and that it had other creditors. The creditors to whom, and the dates and amounts of, these parts of its property so transferred were as follows: To Morley Bros. Saddlery Co., September 8, 1905, $20; September 30, 1905, $20; October 13, 1905, $25; November 3, 1905, $25; November 11, 1905, $20; November 22, 1905, $15. To C. C. Bartley, September 14, 1905, $10; September 26, 1905, $7.13. To California Tannery Co., on September 11, 1905, $10.39,

and on September 23 and 27, 1905, two payments of $10 each. To George De P. Keim Saddlery Co., September 13, 1905, $20; and two payments of $10 each to American Horse Breeder on August 13, 1905, and September 18, 1905. Amounting in all to $212.52. The debts of the bankrupt amounted to $7,742.36; and the assets, when reduced to cash soon afterward, to $1,344.73, excluding $250 retained by attorneys for fees, and some old book accounts of trifling value. As to the question of the solvency of the respondent at the time of making these payments, the evidence in the record leaves no doubt. At no time during this period was the value of its assets equal to its indebtedness. On the contrary, it was at all times much below the amount of the indebtedness. Nor can we entertain any serious doubt that its condition of insolvency was known by the company. It is true that Hans A. Christiansen, who was treasurer, and Max G. Christiansen, who had charge of the purchases and sales, testify that no inventory had been taken for a long time, and that they knew nothing of the financial condition of the concern. And no one connected with the company would profess any knowledge of its condition. But we are loath to believe that those who had charge of and were so much interested in the affairs of the company could be and continue so utterly ignorant of the financial condition of their company as the general terms in which their testimony was given would seem to indicate. It might well be that they did not know it exactly or even with any close approximation to the facts, and perhaps that was the test assumed when they gave their testimony. But that they should have no understanding of its condition while it was running down, its trade small, the disparity of its debts and its assets growing more and more apparent, and its inability to pay its debts becoming so acute that it could only pay them in driblets and when pressed by collectors, we are not prepared to believe. As against the literalness of such statements, we think it safer to rely upon the strong presumption that they had a general knowledge of its condition. However, the knowledge of its insolvency by the respondent is not of itself a material fact. It is only important as it bears upon the question of its intent in making these payments. And the question as we view it is, did those in charge of the affairs of the company, appreciating that it was going to the wall, intend that, in paying these creditors these portions of their debts, they should be made sure of what they got, no matter what might happen to its other creditors; or were these payments made in the ordinary course of business by a going concern, in the expectation that all would come right, and all the creditors be in time duly paid? It may be admitted that either of these conclusions is possible. The payments were not large, but they were made in circumstances which indicated a probability that they would result in preferences. For the reasons we have stated we are strongly inclined to the view taken by the referee and the District Judge, whose concurrent findings upon a question of fact should, in any case, be accepted unless clearly seen to be wrong.

This conclusion makes it unnecessary for us to consider the other grounds on which the petitioning creditors sought an adjudication. There was no occasion for the filing of a cross-bill. No one can complain of a decree in his favor which grants all he demands. The par-

ticular reason which governed the court in making its decree in no wise affected its substance or its value. Besides, the appeal of the other party brought the whole matter here. This court would proceed de novo, and if we found that, upon any ground established in the case, the decree of the lower court was correct, though a wrong reason was given for it, it would be our duty to affirm the decree. Merchants' National Bank v. Cole, 149 Fed. 708, 79 C. C. A. 414; Loveland on Bankruptcy (3d Ed.) § 326.

On the appeal of the Christiansen Harness Manufacturing Company the order adjudicating it bankrupt is affirmed with costs. The cross-appeal by creditors will be dismissed, also with costs.

NOTE.—The following is the opinion of Swan, District Judge:

SWAN, District Judge. The referee to whom by stipulation of the parties it was referred to hear and report the testimony with his recommendation upon the issues raised by the petitioning creditors for an adjudication, and the bankrupt's answer thereto, has recommended that respondent be adjudicated bankrupt. The creditors' petition was filed December 26, 1905, and alleges payment by the bankrupt while insolvent during September, October, November, and December, 1905, to some of its creditors, of sums aggregating several hundred dollars and that such payments were preferences.

(2) The execution December 4, 1905, by the bankrupt, while insolvent, to the Commercial National Bank, a creditor, of the instrument (Exhibit A) attached to the petition of creditors, which it is charged "was designed and intended to give said bank a lien on all the assets" of the respondent, in connection with the election of Mr. Wasey as an officer of the bankrupt corporation, and the conversion by him into cash of the assets of the corporation which are alleged to be "a part of one plan and design to hinder, delay and defraud creditors."

(3) Said Exhibit A is counted on as a chattel mortgage, and its execution and delivery to the mortgagee are charged as a preference.

The second and third propositions are not sustained by the proofs nor is the recommendation of the referee founded upon them, but upon the first ground—sundry payments while insolvent to creditors and with intent to prefer.

Exhibit A is neither "a payment, pledge, mortgage, or gift. * * *" Holmes v. Hall, 8 Mich. 66, 77 Am. Dec. 450; Dalton v. Laudahn, 27 Mich. 527; Winter v. The Iowa, etc., Co., 7 N. B. R. 293, Fed. Cas. No. 17,890. It is a naked power to take possession of the property it describes on future conditions and sell the same for a certain purpose—not a present transfer of the whole or any part of the property. It neither "parts with property or the possession of the property absolutely or conditionally." It could not operate to hinder, delay, or defraud creditors as it interposed no obstacle to the enforcement of their claims nor gave a lien upon the property. It was not regarded as security. This is evidenced by the fact that the bankrupt subsequently executed a mortgage to the bank in due form securing the same debt. This latter instrument is not charged in the petition as an act of bankruptcy. Coming to the payments made to creditors between August and December, 1905, upon which the referee based his recommendation that an adjudication of bankruptcy should be entered, the question presented by the report and the arguments of counsel is whether such payments were made with intent to prefer, and were sufficient in amount to warrant adjudication. The proofs abundantly show that the bankrupt was then insolvent. The directors testify that they were ignorant of the fact. Does their mere ignorance suffice to disprove the intent to prefer? This and the cognate question as to the sufficiency of the preferences in amount must both be answered against the bankrupt's contention.

In the case at bar the admitted payments on old accounts within the four months' period aggregate several hundred dollars and the insolvency of the bankrupt is practically admitted. In Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481, the court says: "The transfer in any case by a debtor of a large por-

tion of his property to one creditor, without making provision for an equal division of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the creditor can show that he was at the time ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him in such cases, and not upon the assignee or contestant in bankruptcy." The act of 1867 construed in that case, like the present act, made the transfer by an insolvent of any of his property an act of bankruptcy if followed seasonably by proceedings in bankruptcy. The exculpatory showing required was not made or attempted in this case. Nothing was offered to show that the bankrupt could "reasonably expect" to pay all its debts when the payments were made between August and December. In Wager v. Hall, 16 Wall. 602, 21 L. Ed. 504, the language of Toof v. Martin, quoted above, is modified, and the transfer by an insolvent debtor "of his property, or a considerable portion of it," is held to be prima facie evidence that a preference was intended unless the debtor shows the two facts required by Toof v. Martin, supra. The modification does not aid the bankrupt. The prima facie effect of the transfer remains undisputed. The proportion of the property transferred by the bankrupt here is relatively to its assets nearly if not quite as large in value as were those in the cases cited. There possibly may be cases of preference to which the courts would apply the maxim "De minimus lex non curat," but this is not one of them. As the inevitable result of these transactions was to create a preference, if the bankrupt was then insolvent, as proved to be the fact, the law conclusively imputes the intention to bring about the result necessarily arising from the nature of the act. Western Tie Co. v. Brown, 196 U. S. 509, 25 Sup. Ct. 339, 49 L. Ed. 571. The facts shown by the testimony approve the recommendation of the referee, and, in accordance therewith, an order of adjudication will be entered against the bankrupt, and the case referred to Referee Davock.

. Respondent's exceptions to the referee's findings of fact: (1) That "respondent only paid bills it was compelled to pay"; and (2) that "The Commercial National Bank had knowledge of the arrangement" (of the bankrupt) "with Mr. Wasey on December 5, 1905"—are sustained on the ground that there is no evidence in the record to support those findings.

Respondent's exceptions to the first, second, and seventh of the referee's findings of law are overruled. Its third, fourth, fifth and sixth exceptions to said findings, in view of the conclusions reached upon the character and effect of the payments by the bankrupt in the months of August, September, October, November, and December are not passed upon. Respondent is also entitled to the additional findings of fact set forth in its exceptions, excepting numbers fourteen and sixteen, which are refused. In the disposition of the bankrupt's exceptions to the finding of the referee, the additional findings of fact prayed—except numbers fourteen and sixteen—have been regarded as added to the referee's report and findings.