Pepperdine v. Bank.

GEORGE PEPPERDINE, Trustee, etc., Appellant, v. NATIONAL EXCHANGE BANK, Respondent.

St. Louis Court of Appeals, April 24, 1900.

1. **Trustee of Bankrupt Estate:** ACTION BY TRUSTEE AGAINST A CREDITOR: INSOLVENCY: NO PREFERENCE ALLOWED. This is a suit· by the trustee of a bankrupt estate adjudged so by the United States District Court of the Western District of Missouri against respondent bank, who it is alleged was paid by the bankrupt after his insolvency was known to the bank: Held that as respondent had knowledge of Cohn's insolvency at the time of receiving the last, three hundred dollars, the same was not received in good faith in view of the United States bankrupt law, and is recoverable back by the trustee.

2. ———: ———: ———: ———: WHAT KNOWLEDGE OF CREDITOR SUFFICIENT. On both reason and authority, knowledge on the part of the creditor that the debtor is insolvent, when he makes a payment, furnishes a foundation for a reasonable cause to believe, that unlawful preference is intended, a preference in fraud of the bankrupt act.

3. ———: ———: ———: AFTER KNOWLEDGE, MUST MAKE INQUIRY. Where a debtor is insolvent within the meaning of the bankrupt act, that is, where his indebtedness is greater than his assets, and the creditor has knowledge of the insolvency, or when he has such information as would put a prudent man on inquiry, and receives a payment, it follows as a necessary inference that it was intended as a preference, and hence fraudulent.

Appeal from the Greene Circuit Court.—*Hon. James Tilford Neville*, Judge.

REVERSED AND REMANDED.

*White & McCammon* for appellant.

(1) Section 60 of the bankrupt act provides: "A person shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." (2) "If a bankrupt shall have given a preference within four months before the filing of a petition, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference it shall be voidable by the trustee, and he may recover the property or its value from such person." Under this, there are two elements necessary in order to avoid a transfer; one, that a bankrupt shall give a preference within four months before the filing of the petition; the other, that the person receiving the preference shall have had reasonable cause to believe that it was intended thereby to give a preference. There is no contention that Cohn was not a bankrupt, nor that he did not give a preference to the bank. The only question left at issue then was, did Sanford have reasonable cause to believe the payment was intended as a preference. The cashier says he knew that Cohn had no property, was insolvent and largely indebted, with an attachment suit pending against him. Knowing this, it is folly to say he did not know that Cohn intended by his payments to give the bank a greater percentage of its debt than his other creditors could

obtain.   The declarations of law asked by plaintiff presented this question, and are in accord with the authorities.   In Dutcher et al. v. Wright, assignee of Peterson, a bankrupt, 94 U. S. 553, a suit to recover a preference, as this, the court says:   "A creditor may be said to have reasonable cause to believe his debtor to be insolvent when such a state of facts is brought to his notice respecting the pecuniary condition of his debtor as would lead a prudent man to the conclusion that the debtor is unable to meet his obligations as they mature in the ordinary course of business.   If it appears that the debtor giving the preference was actually insolvent, and that the means of knowledge were at hand, and that such facts and circumstances were known to the creditor securing the preference as clearly ought to have put a prudent man upon inquiry, it must be held that he had reasonable cause to believe that the debtor was insolvent, if it appears that he might have ascertained the fact to be so by reasonable inquiry."   So later, in the matter of Louis A. Eggert, N. B. N. Rep. p. 185, the referee says:   "The creditor must have reasonable cause to believe that the facts which go to make the payment a preference exist, for the gist of the preference is the insolvency of the debtor, and the creditor must know, or have reasonable cause to believe that his debtor was insolvent when he made the payment."   Approved by Court, 2 N. B. N. Rep. 390.

*Sebree & Farrington* for respondent.

(1)   In order for a trustee in bankruptcy to recover a preference under section 60, subsection b, of the national bankrupt   law of 1898, it is incumbent on such trustee to show that the creditor receiving such preference did so and had a reasonable cause to believe that payment of such money was intended as a preference.   Section 60, subsection

b, Bankruptcy Law of 1898. A trustee can recover a preference under but two sections of the bankrupt law of 1898. One is section 60, subsection b, and the other section 67, subsection e. Blakey v. Boonville Bank, 95 Fed. Rep. 267. (2) Mere knowledge of the fact that a debtor is behind in his payments is not sufficient to allow a recovery under section 60, subsection b. In re Eggert, 98 Fed. Rep. 843. (3) And the law which makes a creditor surrender his preference before his claim being allowed in the referee's court as provided under section 57, subsection g, of the national bankrupt law of 1898, applies in no way to section 60, subsection b. In re Conhaim, 97 Fed. Rep. 923. (4) To constitute a voidable preference as defined in section 60, subsection b, the creditor must have reasonable cause to believe the debtor to be insolvent in fact, as the foundation for reasonable cause to believe that an unlawful preference is intended; and on that inquiry the test is so materially different from that established under the act of 1867, that decisions under the earlier act are not applicable. In re Louis A. Eggert, 98 Fed. Rep. 843.

BLAND, P. J.—The petition states that defendant is a corporation; that on November 17, 1898, a petition in bankruptcy was filed against Henry Cohn by certain of his creditors and on December 30, 1898, he was by the United States District Court of the Western District of Missouri, adjudged a bankrupt. That the plaintiff was duly chosen and appointed trustee of his estate, qualified as such, and is so acting.

That said Cohn long prior to July 20, 1898, and then was engaged in business as a merchant at Springfield, Mo., and was on said date and theretofore largely indebted and his property was not at a fair valuation sufficient to pay his debts by $5,000 or more and he was wholly insolvent. That

while he was so insolvent and within four months before the filing of the said petition, said Cohn made a transfer of a part of his property to the defendant, one of his creditors. That the effect of said transfer to defendant of his property was to enable defendant to obtain a greater percentage of its debt than any other of his creditors of the same class.

That the defendant and its agents and officers acting therein in its behalf had reasonable cause to believe and did believe that it was intended by such transfer and payment to give a preference to defendant and enable it to obtain a greater percentage of its debts than Cohn's other creditors.

That the transfer to defendant of property with dates and amounts was made as follows:

```
July 22, 1898........................$500
Sept. 27, 1898 ...................... 200
Oct. 10, 1898 ....................... 100
                                     ----
        Aggregating..................$800
```

So paid and transferred to defendant, and with a prayer for judgment for that sum and costs.

The answer admits that defendant is a corporation; that a petition was filed against Cohn, that he was adjudged a bankrupt and that plaintiff was elected and qualified as trustee as alleged in the petition.

That prior to July 20, 1898, said Cohn was engaged in business and indebted to various firms.

That on July 22, 1898, defendant was paid $500 by Cohn; on September 27, $200, and October 10, $100, but denies that at the time of receiving said payment it had reason to believe or did believe it was getting a preference over the other creditors of Cohn.

Alleges that at the time of receiving the $500 payment it did not know and had no reason to believe that said Cohn was unable to pay his indebtedness in full to all his creditors,

and at the time of receiving the other amounts defendant was informed and believed Cohn had made a satisfactory settlement with his other creditors.

That it held no security for the said indebtedness, and all said payments were made voluntarily and the money accepted by it in the belief that Cohn was paying his other indebtedness in full, or settling it to the satisfaction of his other creditors.

The replication denies all allegations of new matter in the answer.

On the trial the testimony for the plaintiff was as follows: It was admitted that the claims allowed against the estate of Henry Cohn aggregate between $5,400 and $5,500.

That there has been a dividend declared of 19 per cent, which leaves a small amount in the trustee's hands, such as might be necessary to retain to pay expenses, and that the entire amount can not make 25 per cent to the creditors.

E. L. Sanford testified in substance that he was cashier of defendant bank; that he first learned of the shaky condition of Cohn three or four days after he made the first payment of $500; that after Cohn sold his store in Springfield he went to Collinsville, Illinois, where Cohn resided, and there learned that he was insolvent; that he talked with Cohn and with bankers at that place and learned from Cohn that he had a good paying business and from the bankers that he was a good money maker, and had always paid his debts and was considered honest; that he returned to Springfield without taking any steps to collect the bank debt, and relied on Cohn's promise then made to pay every dollar he owed the bank; that he understood Cohn owed $4,000 or $5,000, but did not learn who his creditors were, and also understood he had disposed of his Springfield store for $4,500; that he did not know of bankrupt proceedings against Cohn when the payments were made to the bank; that when he made the

second payment on September 27, 1898, he said: "Now, Sanford, you see I told you to leave me alone. I am going to pay my debts," and showed him $700 or $800 in debts that he had paid; that he (Sanford) supposed Cohn was paying other creditors the same as he was paying the bank, and that Cohn said that was what he was doing; that at the time he paid the $100 in October he said he was going to get out of debt, and that he was led to believe he was paying other creditors, because he showed him $700 or $800 in notes and receipts that he had paid on other debts, and believed that he had $4,000 or $5,000, because he had just sold out his store for $4,500 in cash. The testimony of Sanford was corroborated by Cohn, who also testified that he had made payments to thirty different creditors, aggregating $3,560, after selling out and before he was adjudged a bankrupt.

The plaintiff asked the following instructions, all of which the court refused:

"The court declared the law to be as follows:

"1. If at the time of payment of either amount paid to defendant bank, the cashier, Sanford, knew Henry Cohn was insolvent and without property and owed to various creditors $5,000 or more, then said cashier was not justified in accepting such payment without knowing or being led to believe that Cohn was making payment, or provision for payment of a proportionate amount to his other creditors; and if said cashier made no inquiry or attempt to learn whether any provision was being made for a ratable distribution among Cohn's other creditors, then any payment so made may be recovered by the trustee of said estate, and the plaintiff will have judgment therefor.

"2. After knowledge of the insolvency and indebted condition of one is brought to his creditors, such creditor must be presumed to know that any payment to him is a preference; and he is not protected in accepting such payment with-

out inquiry and reasonable cause to believe that such creditor is making provision for a proportionate payment to his other creditors. And if the evidence shows knowledge on the part of Sanford of Cohn's indebtedness and insolvency at the time of, or before the payment to him of any one of the payments made, and that he made no inquiry or attempt to learn whether Cohn was providing for the payment of all his other creditors a like proportion of their claims, then the plaintiff must recover the amount of all such payments so made and accepted.

"3. The evidence showed the cashier of defendant bank had reasonable cause to believe it was obtaining a preference, and judgment should be for the plaintiff for the last two payments aggregating $300."

No other instructions were asked or given. The court sitting as a jury found the issues and rendered judgment in favor of the defendant.

Exceptions were saved to the admission of statements made by Cohn to Sanford, when he made the payments of $200 and $100, as to what he had done and intended to do about paying his debts. These statements were a part of the *res gestae* of the transactions, and as such served to show the intention of Cohn in making, and the good faith of Sanford as cashier of the bank in receiving payment from a man whom he knew to be insolvent, and were therefore admissible in this proceeding as tending to refute the assumption that the payments were made in fraud of the bankrupt law. There is but one issue of fact in this case, that is, did Sanford, the cashier of the defendant bank, when he accepted the payments from Cohn, have reasonable cause to believe that his bank was obtaining a preference over other creditors? Subsection b, sec. 60 of the bankrupt act of 1898 provides: "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of

the petition and before the adjudication, and the person receiving it or to be benefited thereby or his agent acting therein shall have reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." The appellant has abandoned all claim to the first payment of $500, but contends that as the other payments were made after Sanford had acquired knowledge of the insolvency of Cohn, this knowledge affords a foundation from which it should be inferred that Sanford had reasonable cause to believe that by the payments Cohn intended to give a preference to the bank. On both reason and authority knowledge on the part of the creditor that the debtor is insolvent when he makes a payment, furnishes a foundation for reasonable cause to believe that an unlawful preference is intended, that is, a preference in fraud of the bankrupt act. In re Eggert, 98 Fed. Rep. 843; Dutcher et al. v. Wright, Assignee of Peterson, a bankrupt, 94 U. S. 553; Toof et al. v. Martin, Assignee, etc, 13 Wall. 40. Where a debtor is insolvent within the meaning of the bankrupt act, that is, where his indebtedness is greater than his assets, and the creditor has knowledge of the insolvency, or where he has such information as would put a prudent man on inquiry, and receives a payment, it follows as a necessary inference that he had reasonable cause to believe that it was intended as a preference, and he can avoid this inference only by showing that an amount proportionable to the payment was made or provided for to the other creditors. The instructions asked by appellant and refused by the court were in harmony with these views and should have been given. Their refusal indicates that the learned circuit judge took a contrary view of the law of the case for which reason the judgment is reversed and the cause remanded.

Judge *Bond* concurs; Judge *Biggs* dissents.