WALTER I. LAMPKIN, Trustee, Appellant, v. PEOPLES' NATIONAL BANK, Respondent.

Kansas City Court of Appeals, December 1, 1902.

1. Bankruptcy: PREFERRED DEBTOR: PAYMENT OF DEBT: NOTICE. In order for the trustee of a bankrupt to recover a payment made shortly before the bankruptcy, it is not necessary that the debtor should know or even believe that a preference was intended; it is sufficient if he have a reasonable cause to believe such preference is intended; and in this case there was evidence tending to show reasonable cause to believe a preference was intended. (Affirmed on motion for rehearing.)

2. ———: PREFERENCE: REMEDY: BAR. A firm sold their stock and with a part of the money paid their debt to the bank. Some months later their trustee in bankruptcy sued the purchaser to recover the goods on the grounds of fraud in the sale. This action was compromised. He then instituted suit against the bank to recover the money paid it as a preference. Held, the remedies were not inconsistent, and the first action was no bar to the second.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott,* Judge.

REVERSED AND REMANDED.

*Charles E. Morrow* and *Karnes, New, Hall &
Krauthoff* for appellant.

Filed argument.

*O. L. Houts* for respondent.

Filed argument.

ELLISON, J.—Plaintiff is trustee in bankruptcy
in charge of the estate of Daniel McNair and J. Louis
McNair, who were partners as retail merchants. They
owed the defendant $1,200 and paid that debt and de-
fendant received the money at a time when said Mc-
Nairs were insolvent, and (it is charged) the defendant
had reasonable cause to believe that it was intended by
McNairs to give it a preference over other creditors,
contrary to the intent and purpose of the bankrupt law.
Within a few days after this payment was made the
McNairs were adjudged bankrupts by the Federal dis-
trict court for the Western district of Missouri. Plain-
tiff instituted this action against defendant to recover
the sum so paid to it on the ground that the payment by
McNairs and the receipt of the payment by defendant
was contrary to the provisions of the bankrupt law. The
trial court sustained a demurrer to the evidence and
plaintiff has appealed.

In order to avoid the payment to defendant it is not
necessary that its officers should have known, or even be-
lieved, that a preference was intended by the McNairs.
It is sufficient if they had *reasonable cause* to believe
such preference was intended. Pepperdine v. Bank, 84
Mo. App. 234; Merchants Bank v. Cook, 95 U. S. 342;
Dutcher v. Wright, 97 U. S. 553; Toof v. Martin, 13
Wall. 40. When that is established the trustee has a
right to the judgment of the court avoiding the payment
and adjudging that he recover the money paid. Landis

v. McDonald, 88 Mo. App. 335. In this case there was evidence having a tendency to support the charge that defendant had reasonable cause to believe a preference was intended and, therefore, the trial court must have sustained a demurrer on the ground which we now proceed to consider.

It appears that on the 30th of December, 1899, the McNairs being merchants, as has already been stated, sold their stock of goods to one Shryack for $1,500, which sum the latter paid to them on that day; and that thereupon the McNairs took $1,200 of said sum and paid to defendant the debt aforesaid which is the subject of this controversy. It further appears that in the August following this, plaintiff, with knowledge of all the facts now shown, brought suit against Shryack for the value of the merchandise so purchased by him on the ground that it was a fraudulent sale for the purpose of defrauding creditors, Shryack participating in the fraud. That afterwards plaintiff compromised and settled said action by accepting $407.50 "in full satisfaction of the entire claim and amount in controversy in said cause," and dismissing the suit. Defendant states in its answer, "that by bringing said action and accepting said money, plaintiff elected to and did renounce and avoid said sale, and can not assert the validity thereof, and recover the purchase price for said goods and fixtures paid therefor by the said Shryack at said sale, and a portion of which was afterwards paid to this defendant as before stated." The question is, did plaintiff by bringing said action and accepting the sum mentioned in satisfaction thereof preclude himself from maintaining the present action? We think he did not. Plaintiff attacked the sale to Shryack on the general principle which invalidates a fraudulent transaction; in this instance conceived and carried out by the parties in fraud of the creditors of the McNairs. In the present action he attacks the legality of the payment to defendant and

Vol 98 app—16.

receipt of the money by defendant, on the arbitrary right given him by the statute of bankruptcy. There is no inconsistency in affirming the right to follow both remedies. He sought to recover the value of the goods in the one instance for the reason that they had been fraudulently received from his debtor, thereby attempting to deprive him of his right, as a creditor, to make his debt out of them. In the other instance, he seeks to recover the money paid out by the bankrupt which the bankrupt law declares to be unauthorized. "A party can not ask the aid of the law upon inconsistent and contradictory grounds; but if co-existent remedies are consistent with each other, he may adopt all or select any one which he thinks best suited to the end sought, and only the satisfaction of the claim in one case constitutes a bar in the other." Bradner v. Williams, 178 Ill. 420. And so it was held that there was no inconsistency in an action against a guardian for conversion of funds and an action against one who received the funds, and, hence either action did not constitute an election to renounce the other. Easton v. Somerville, 111 Iowa 164. It was held in this court that the fact that a depositor in an insolvent bank had proved up his claim before the bank's assignee, did not preclude him from pursuing his statutory remedy against an offending officer in receiving deposits knowing the bank to be insolvent. Eads v. Orcutt, 79 Mo. App. 511. And so a plaintiff at the same time he proceeds against a sheriff for an escape, may take out a *fi. fa.* against the property of the defendant; the remedies not being deemed inconsistent. Jackson v. Bartlett, 8 Johns. 361; see, also, Canadian Ty. Co. v. McGuire, 119 Mich. 533; Clark v. Hall, 54 Neb. 479; Vulcanite v. Caduc, 144 Mass. 85; Bank v. Birch, 130 N. Y. 221; Bundy v. Monticello, 84 Ind. 119.

But it is insisted by the defendant that the goods, the value of which plaintiff recovered against Shryack, and the money which the McNairs received for them were one and the same thing; and that when the Mc-

Nairs paid to defendant $1,200 which was received for the goods it was but the representative of the goods, and this suit for the $1,200 is but another suit for the goods, the value of which has already been recovered (or, which is the same thing, compromised) in the Shryack suit. We regard the argument as unsound. The goods, and the money they brought at the sale, are not one and the same thing. For, as between the McNairs and Shryack the sale of the goods was valid and the goods became Shryack's, while the money became McNairs'. They exchanged separate properties; each becoming the owner of separate properties. Shryack's money became the property of the McNairs, and the McNairs' goods became the property of Shryack. This case is different in its fundamental facts from that class of cases in equity where a certain article of property, or amount of money, may be followed through various mutations and ownerships; and wherever found—in whatever changed aspect, or in whomsoever's hands—may be made to stand for whatever it was liable to stand for originally. The conclusion asserted by the defendant that both the goods in the hands of the vendee and the money in the hands of the vendor can not be recovered by plaintiff is not founded on any good reason. When there is a fraudulent sale of property participated in by both vendor and vendee, the sale is nevertheless valid, except as it may affect the rights of third parties and it is avoided only in the interest of such parties. The property becomes the vendee's and the purchase money becomes the vendor's. The property is liable to be taken for the creditor's debt because of the fraud. The fraudulent character of the sale prevented its being put out of the creditor's reach. But the *purchase money* in the hands of the vendor debtor *may also* be subjected to the creditor's claim because it is the debtor's property. Suppose B. is a debtor and owns a tract of land which he sells to C. with intent to defraud his creditors, C. participating in the fraud. The land in C's. hands may be

subjected to the creditor's claim and so may the pur-
chase money which B. received from him.   Of course
there can be but one satisfaction, but up to that point,
either or both classes of property may be pursued by
the creditor.   This is made quite apparent by the sug-
gestion that if the creditor should fail to make all his
debt out of the land fraudulently sold, he surely would
not, for the mere reason that he had pursued the land,
be held to have cut himself off from the right to go
after his debtor's property for the balance.   Will it be
said that merely for the reason that the creditor had
pursued the land the debtor may *ever after* hold the
purchase money of such land as an *exemption?*   The
vendee who has participated in the fraud of his vendor
parts with all title and interest in the money he has paid
for the property and he can not be reimbursed on that
account where the property has been seized by the cred-
itors.   For the maxim is that "He who hath committed
iniquity shall not have equity."   Allen v. Berry, 50
Mo. 90; Railroad Co. v. Soutter, 13 Wall. 517; Beidler
v. Crane, 135 Ill. 92; McNichols v. Richter, 13 Mo. App.
515; Bank v. Fowler, 93 Wis. 241; Furguson v. Hill-
man, 55 Wis. 181; Millington v. Hill, 47 Ark. 301.   The
money not being the vendees after being paid over by
him, and he not having any claim in equity thereto, no
one has ever yet been heard to say that it was not the
vendor's.   In the case last cited the money which had
been paid the fraudulent grantor by the fraudulent
grantee had been seized by a creditor and when other
creditors then, in turn, seized the property fraudulently
conveyed to the grantee, she wanted to be allowed for
the money the first creditor had seized.   But the court
said:

"It is also urged that Mrs. Millington's money hav-
ing been appropriated by Galbreath, a creditor of her
vendor, to the payment of his debt, the land should not
now be taken to satisfy debts that were not liens at the
date of her purchase; or, that if it is condemned to pay

these debts, she should be allowed to share in the assets as the equitable assignee of the extinguished demand.

"It is not true, in the outset, that Mrs. Millington's money has been taken in satisfaction of her vendor's debt. The decree in the suit between her, her vendor and his creditor settled the question that the money was her vendor's. It became his by virtue of her purchase of the lands, and she became the owner of the lands; but, by virtue of the fraud that entered into the purchase, it was subject to the incumbrance of the debts then existing against her vendor. The largest of his creditors sought to, and did, discharge his debt out of the purchase money she paid for the land and relieved the land to that extent.

"On the other hand, we do not deny the principle that where a person pays money for which another is liable, equity will clothe his claim with the garb the contract he has discharged was invested with, but it is never applied in aid of a fraud. It is a maxim that 'he that hath committed iniquity shall not have equity,' and in accordance with it, it is the settled rule that 'a party bargaining with a debtor with fraudulent intent, does it at the peril of having that which he receives taken from him by the creditors of the debtor whom he is attempting to defraud, without having any remedy to recover what he parts with in carrying out the bargain.' Waite Fr. Conv., sec. 192; Railroad v. Soutter, 13 Wall. 517; Pettus v. Smith, 4 Rich. Eq. (S. C.), 197. Mrs. Millington must be left in the snare her own devices have laid."

Having, as we believe, demonstrated that the money paid to the McNairs by Shryack became the property of the McNairs disassociated from the goods, and without either legal or equitable claim to it by Shryack, it follows that it should be looked upon as any other money of McNairs' arising from any other source. This being true, when they, as debtors of the defendant bank, paid their debt to the bank with this money and if the bank

received it with reasonable cause to believe a preference was intended, the payment came under the influence and control of the bankrupt law.

The judgment should therefore be reversed and the cause remanded. *Smith, P. J.,* concurs; *Broaddus, J.,* dissents.

## ON MOTION FOR REHEARING.

ELLISON, J.—The only objection to the foregoing opinion which we care to notice by further comment is that taken to the statement that there was substantial evidence having a tendency to show that defendant had reasonable cause to believe that a preference was intended when the twelve hundred dollars was paid. We have gone over the evidence again and find that we were abundantly justified in making that statement. We will not attempt to set out such evidence, but will merely refer to some of the more important portions. In the first place the defendant, through its chief officer, had every opportunity to learn and know the financial condition of the McNairs. The defendant was a bank and the plaintiffs were merchants in the same town, their respective places of business being near to each other. The McNairs did their banking business with defendant. They became borrowers of defendant from the start and continued so to the end. Daniel McNair (the principal one to be considered) had some land in Johnson county which was under mortgage. His residence was in his wife's name and so was a certificate of stock in a bank at Holden for one thousand dollars. The firm's bank account was dotted all through with overdrafts and from beginning to the end showed an unprosperous merchant. The balances, almost without exception, were small; until at the end the balance was merely nominal—a few cents. We readily understand that small balances may be appropriate to small merchants, and that they need not necessarily indicate de-

cline in financial condition. But those exhibited in the record ought not to encourage belief in the mind of a reasonable man that the owner of such account could, with safety to himself, borrow more than two thousand dollars, especially when the borrower's chief possessions were either mortgaged, or in his wife's name. At the time the McNairs began to become indebted to the bank in April, 1898, the stock of goods invoiced (or at least it was so represented to the bank) the sum of $4,300; yet in about twenty months thereafter, with triple increased debt to defendant, it was sold for $1,500.

The first loan to McNairs was made in April, 1898, for $500. The second was in June, 1898, for $1,200, and the third, for $400, was made in April, 1899. The first one was not paid but renewed along until December 22, 1899. The last one was renewed until December 5 when the $300 was paid and the balance ($100) was paid December 22. The second one, for $1,200 was paid on December 30 from money realized on the sale of stock, and represents·the sum in controversy. The date of McNairs' last balance, twenty-four cents, was December 9. They made no further deposits. The defendant, through its chief officer, was urging payment of this indebtedness, in all $2,100, through the month of December, yet some of it was not due; that is, the time of last renewal had not expired. He succeeded in collecting the two smaller notes and then, finally, the large one. Defendant's officer knew that in April, 1898, the stock was valued at $4,300. He knew that at the last of December, 1899, less than two years thereafter, it had become reduced to $1,500 and this with an increasing debt and a bank account become extinct. We have not referred to all the testimony and circumstances bearing on the point, but have said enough to indicate what kind of evidence we deem material as tending to support the affirmative of the issue that defendant had reasonable cause to believe that a preference was intended when it received the payment in controversy. If the

trial court sustained a demurrer on the ground that there was no evidence tending to sustain that issue, the effect of such ruling would be to say that the evidence to which we have called attention, and other of like kind, was not worthy of consideration. This we would regard as error.

The motion is overruled.