## In re KERLIN.

(Circuit Court of Appeals, Sixth Circuit. November 4, 1913.)

No. 2,367.

BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—TRANSFER OF PROPERTY.

An alleged bankrupt and another were sued on a note for $122 on which they were indorsers. Their attorney settled the suit for $15, which he himself paid, and had not been repaid at the time the petition in bankruptcy was filed. *Held*, that the transaction was merely a substitution of creditors, with advantage to the debtor's estate, and was not a transfer of property to a creditor with intent to prefer, made an act of bank-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ruptcy by Bankr. Act July 1, 1898, c. 541, § 3a (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), even though defendant was insolvent at the time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

In the matter of Richard G. Kerlin, alleged bankrupt. From orders adjudging Kerlin bankrupt, appeal is taken. Reversed, and involuntary petition dismissed.

H. & R. Newbegin, of Toledo, Ohio (J. H. Tyler, of Toledo, Ohio, of counsel), for appellant.

Calkins & Storey, of Toledo, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This is an appeal from an order of July 24, 1912, adjudging Richard G. Kerlin, bankrupt. The proceeding was commenced by petition of certain of his creditors in involuntary bankruptcy, alleging that, while insolvent, he, in conjunction with E. M. Kerlin, committed an act of bankruptcy on January 26, 1911, by transferring and paying $15 of their money to Merton L. Bamer in settlement of a claim against them as indorsers on a promissory note; that this was done with "intent by Richard G. Kerlin to prefer Merton L. Bamer over his other creditors." In his answer Kerlin denies that he committed an act of bankruptcy, but does not deny insolvency.

The Kerlins had been sued in a justice's court upon the promissory note mentioned; the balance due being about $122. The settlement, with their consent, was conducted by their counsel, Mr. Newbegin, who delivered his individual check in payment of the amount, and received a transfer of the note in favor of the Kerlins without recourse. It is stated in the instrument of settlement that Bamer received the $15 of "E. M. and R. G. Kerlin jointly," through their attorney, and it is earnestly contended that this shows that the money belonged to the Kerlins; but testimony was heard by the trial judge distinctly showing that the money was paid from the individual funds of the attorney, and that he has in no wise been reimbursed. The court so treated the transaction, and concluded that the Kerlins were "jointly and severally indebted" to the attorney in the amount so expended; and we see no sufficient reason to disturb this interpretation of the evidence.

The case, then, in its last analysis, amounts only to a substitution of creditors of the alleged bankrupt, and with the result that the indebtedness involved in the transaction was greatly reduced, the old debt of $122 in favor of Bamer having been converted into a debt of $15 in favor of Newbegin. It was neither alleged nor attempted to be proved that any preconcerted or later arrangement was made between the Kerlins and their attorney touching an intent through reimbursement of Newbegin to effect a preference of Bamer over the other creditors. In short, this is not a case at all of a transfer of property to a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

creditor; if it were, and it involved a substantial portion of the debtor's property, an intent to prefer the creditor might, prima facie, at least, in view of the admitted insolvency, be implied (Toof v. Martin, 13 Wall. 40, 48, 20 L. Ed. 481; John Naylon & Co. v. Christiansen Harness Mfg. Co., 158 Fed. 290, 292, 85 C. C. A. 522 [C. C. A. 6th Cir.]; Loveland on Bankruptcy [4th Ed.] §§ 145–147, and citations; Remington on Bankruptcy, §§ 129–132, and citations); but since the amount involved is so small, and since no scheme of fraud or undue advantage concerning creditors, as between the insolvent debtor and the person who furnished and paid the money, was in issue, such facts cannot be presumed, but must await allegation and proof.

The case fails upon the very hypothesis of fact upon which it was based. It is not an answer to say, as is suggested here, that it would be difficult, if not impossible, to prove an ulterior purpose between client and counsel touching repayment and intent to prefer. Whether this would arise from the meager sum involved is not stated; but our attention has not been called to any decision sustaining counsel's theory. This payment and the obligation it created constituted a business transaction, involving the relation of debtor and creditor, which, as it seems to us, is clearly open to ordinary rules of evidence.

It is helpful to bear in mind that the transaction did not deplete Kerlin's estate (Continental Trust Co. v. Chi. Title Co., 229 U. S. 435, 443, 445, 33 Sup. Ct. 829, 57 L. Ed. 1268); on the contrary, as already stated, the settlement reduced the indebtedness, and to that extent in effect increased the estate. Such a fact is apparently opposed to the idea of an intent to prefer. However, it is insisted that the case just cited, and kindred cases, are not applicable, because they relate only to voidable transactions covered by section 60 of the Bankruptcy Act. Hence, distinction is urged between the preference defined by that section and the preference forbidden by section 3, art. 2. The difference between a transfer "with intent to prefer," which is made an act of bankruptcy by the latter provision, and the "preference" denounced by the former, even since the amendment of 1910 (Act June 25, 1910, c. 412, § 11, 36 Stat. 842 [U. S. Comp. St. Supp. 1911, p. 1506]) of section 60b, is, as respects the present issue, formal rather than material. True, "intent to prefer" within the meaning of section 3, art. 2, relates to the debtor, while "reasonable cause to believe," under section 60b, refers to the creditor; but this difference can affect only the evidence calculated to reveal the debtor's intent in the one instance, and the creditor's belief in the other; for there is complete identity between the object of a preference made under the one and that received under the other. Their ultimate effect upon the debtor's estate and his other creditors is obviously the same, and so the question of depletion of estate is alike relevant and important in either case (see Swarts v. Fourth National Bank of St. Louis, 117 Fed. 1, 3, 54 C. C. A. 387 [C. C. A. 8th Cir.], respecting similarity of such preferences). Upon the whole we are convinced that Kerlin did not commit an act of bankruptcy within the fair intendment of the law.

The order is reversed, with costs, and with direction to dismiss the petition.