STEARNS SALT & LUMBER CO. v. HAMMOND.

(Circuit Court of Appeals, Sixth Circuit. November 4, 1914.)

No. 2482.

1. BANKRUPTCY (§ 164*)—PREFERENCE—PROCEEDS OF INSURANCE POLICIES.

Where a mortgage obligated the mortgagor to insure the property for the benefit of the mortgage trustee "as a further security," and authorized the trustee to effect the insurance in case of the mortgagor's default, the premium paid to be an additional lien, the nonpayment of which immediately authorized foreclosure, and, after the proceeds of certain policies effected "under the mortgage" had been paid, the mortgagee relinquished a portion of such proceeds to the mortgagor, who had become bankrupt, that it might be repaid and credited on an unsecured account due the mortgagee, such amount, when relinquished, became the mortgagor's property, and a payment thereof to the mortgagee for credit on the unsecured debt constituted a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

2. BANKRUPTCY (§ 168*)—PREFERENCES—INVALID PAYMENT—RESCISSION.

Where a mortgagee, on collecting certain insurance on the mortgaged property, surrendered a portion thereof to the mortgagor, that it might be repaid to the mortgagee and credited on an unsecured indebtedness, such transaction was not such that, on the repayment being declared a preference, the mortgagee was entitled to rescind the same in toto and claim the right then to credit the money relinquished on the mortgage debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 234; Dec. Dig. § 168.*]

3. BANKRUPTCY (§ 168*)—PREFERENCES—RIGHTS OF TRUSTEE.

Where a bankrupt delivered certain personal property to its creditor, receiving therefor credit for a specified sum as the price of the property on the bankrupt's indebtedness to the creditor, it appearing that the transfer constituted a voidable preference, the objection, to an action in assumpsit by the trustee to recover the amount, that the creditor had not received money or money's worth for the property, is not well taken.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 234; Dec. Dig. § 168.*]

4. BANKRUPTCY (§ 341*)—ALLOWANCE OR DISALLOWANCE OF CLAIMS—"FINAL JUDGMENT."

Action of a referee in bankruptcy allowing or disallowing a claim is a final judgment in the absence of review.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 516, 528; Dec. Dig. § 341.*

For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

5. BANKRUPTCY (§ 341*)—ALLOWANCE OF CLAIMS—"RES JUDICATA."

Since it is of the essence of the doctrine of res judicata that the proposition respecting which it is invoked be adjudicated, either expressly or by necessary inference, the allowance of a claim in bankruptcy to a cred-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

itor who had received a preference, without any express adjudication that a preference had not been created, was not res judicata of that fact, especially where, 30 days after the order allowing the creditor's unsecured claim, an order was entered directing the trustee to sue to recover the preference, and that the estate be kept open until the termination of such litigation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 516, 528; Dec. Dig. § 341.*

For other definitions, see Words and Phrases, First and Second Series, Res Adjudicata.]

In Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit by William L. Hammond, as trustee in bankruptcy of the Handy Things Company, against the Stearns Salt & Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles McPherson, of Grand Rapids, Mich., for plaintiff in error. H. T. Heald, of Grand Rapids, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This is a suit by the trustee in bankruptcy of the Handy Things Company against the Stearns Salt & Lumber Company, under section 60b of the Bankruptcy Act (Comp. St. 1913, § 9644), to recover certain alleged preferential payments by the bankrupt. Plaintiff recovered verdict and judgment. The important facts are these:

On May 23, 1908, the Handy Things Company gave a trust mortgage for $35,000 upon its manufacturing plant and substantially all its property of every kind, to secure indebtedness to the Stearns Salt & Lumber Company (hereafter called the Lumber Company) and to a bank of which the mortgage trustee was cashier. One of the factories. and part of the personal property was destroyed by fire on February 23, 1911. The mortgage trustee collected, under fire insurance policies upon the property so destroyed, $34,359.04. At this time the Lumber Company held a large unsecured running account against the Handy Things Company, in addition to its mortgage claim. At its request, the Handy Things Company gave the Lumber Company an order on the mortgage trustee to turn over to the Lumber Company $15,000 of the insurance money to be applied upon the open unsecured account mentioned. This payment and application were so made March 23, 1911. The remaining insurance money was applied upon the obligation secured by the mortgage, less $345 premiums upon the insurance policies in question. The mortgage indebtedness was thus entirely paid except about $15,000 still owing the Lumber Company, and the mortgage was continued in force. Between March 15 and March 31, 1911, which was in the month following that of the fire, the Handy Things Company turned over to the Lumber Company certain machinery, lumber, and other supplies, at a price of $3,227.20, which was also applied upon the unsecured claim of the Lumber Company. On April

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4, 1911, the Handy Things Company was adjudicated bankrupt, upon involuntary petition, the Lumber Company being the principal petitioning creditor, the mortgage trustee being appointed trustee in bankruptcy, as well as receiver. The Lumber Company filed in the bankruptcy proceedings an unsecured claim for $25,888.76, being the amount remaining after the application of the alleged preferential payments, viz., the $15,000 insurance money and the $3,227.20 referred to. The Lumber Company also made proof of claim under the mortgage. To both these claims objections were made on account of the alleged preferences, with request that the trustee be directed to bring suit for the recovery of the preferential payments. Both claims were allowed, and the suit ordered. The total remaining assets of the bankrupt, after payment of expenses, were applied upon the Lumber Company's secured claim, leaving, after the inclusion of interest, a deficit of $1,235.88, and of course leaving nothing (unless through the proceeds of this litigation) for application upon the unsecured claim of the Lumber Company, or upon the claims of other creditors, amounting to upwards of $17,000. The alleged preferences were all within 20 days of bankruptcy. The verdict and judgment were for the full amount of the alleged preferences.

At the close of the testimony, defendant moved for directed verdict on the ground that the $15,000 of insurance money never belonged to the bankrupt's estate, and is therefore not recoverable by the trustee. In this connection it is urged that the policies ran to the mortgage trustee, and not to the mortgagor, a proposition we shall later refer to. It is to be noted that the case presents no controversy respecting the right of the trustee in bankruptcy to the proceeds of insurance upon property conveyed fraudulently or preferentially, under the Bankruptcy Act or otherwise, as was the case in certain decisions relied upon by defendant, such as Forrester v. Gill, 11 Colo. App. 410, 53 Pac. 230, and Insurance Co. v. Grocery Co., 113 Ga. 786, 39 S. E. 483. The mortgage in question was free from taint of fraud or preference. Nor is there here any question of insurable interest on the part of the mortgagee, either on behalf of the insurance company or as between the mortgagor and the mortgage trustee. The insurance company has paid the loss. It must be conceded that, as between the mortgagor and mortgagee, the latter had the prior claim to the insurance money, to the extent necessary to satisfy the mortgage debt, and that it could properly receive the money directly from the insurance company.

[1] The simple question is whether the insurance money to which the mortgagee voluntarily, and for its own supposed benefit, relinquished all claim under the mortgage became thereby, as between the mortgagor and mortgagee, the property of the mortgagor, and so within section 60 of the Bankruptcy Act. The mortgage obligated the mortgagor to insure the property for the benefit of the mortgage trustee, "as a further security" for the mortgage indebtedness, and, in case of the mortgagor's failure to so insure, authorized the trustee to effect insurance, the premium paid to be an additional lien upon the mortgaged property, whose nonpayment immediately authorized foreclo-

sure. We find no evidence that the policies insured only the mortgagee's interest, as distinguished from a policy insuring the mortgagor, with loss payable to the trustee as his interest might appear, unless contained in the testimony of the trustee that:

"Under this mortgage I caused insurance policies to be taken out payable to me as trustee, and it was upon these insurance policies that I collected a little less than $35,000."

In view of the provisions of the mortgage, we do not think the necessary inference from this testimony would be that the policies insured only the mortgagee's interest. In our opinion the natural inference would be that the usual practice in such cases was followed, viz., the issuance of the policies in the name of the mortgagor as the insured, with the well known standard-policy mortgage loss clause, making loss, if any, payable to the mortgagee (trustee) as its "interest may appear." The statement that the insurance was effected *under the mortgage* naturally, we think, so implies. It is noticeable that the testimony is not that the policies ran to the trustee, or that they insured only his interest, but that they were "payable" to him "as trustee." Under such a policy the mortgagor, under familiar principles, would plainly be entitled to the insurance; except so far as needed or desired by the mortgagee for the payment of his mortgage. But if the testimony is to be interpreted as meaning that the policy actually ran to the trustee, and did not in terms secure the mortgagor's interest, yet, under the circumstances stated, including the facts that the insurance was taken by virtue of the mortgage provision and at the expense of the mortgagor, the latter was entitled to its benefit to the extent of having its proceeds applied pro tanto to the liquidation of the mortgage debt (Pendleton v. Elliott, 67 Mich. 496, 498, 35 N. W. 97), and equitably, at least, was entitled to whatever was collected beyond the amount necessary or desired to satisfy the claims of the mortgagee thereto. See Wheeler v. Insurance Co., 101 U. S. 439, at page 441, 25 L. Ed. 1055; and see Brown City Savings Bank v. Windsor (C. C. A. 6th Cir.) 198 Fed. 28, 30, 117 C. C. A. 136, 41 L. R. A. (N. S.) 1012, and following, where the relative rights of mortgagor and mortgagee under the mortgage loss provisions in insurance policies are discussed in an opinion by Judge Warrington.

To say the least, it was entirely competent for the Lumber Company to waive its claim to the insurance money and to surrender it to the mortgagor, making it the latter's property; and this we think it practically and effectually did by the course taken, and as effectively as if the money had first been paid over to the mortgagor and afterwards paid by it to the Lumber Company. Circuity of arrangement will not alter the force of a transaction preferential in fact. Newport Bank v. Herkimer Bank, 225 U. S. 178, 184, 32 Sup. Ct. 633, 56 L. Ed. 1042. True, there can be no preferential transfer without a depletion of the bankrupt's estate; Continental Trust Co. v. Chicago Title Co. 229 U. S. 435, 443, 33 Sup. Ct. 829, 57 L. Ed. 1268; In re Kerlin (C. C. A. 6th Cir.) 209 Fed. 42, 44, 126 C. C. A. 184. But, in any view which may be taken of this case, it is obvious that the transfer in question did necessarily operate to deplete the assets available to the general and

unsecured creditors; for had it not been made, the Lumber Company's secured claim would have been paid to the extent of $15,000, and the remaining mortgaged property would, to the like extent, have been free for application to the claims of general creditors, instead of being ultimately absorbed in payment of the Lumber Company's secured claim.

[2] But it is urged that the alleged preferential transaction was a single one, consisting of the payment of the insurance money to defendant and its application upon the unsecured debt; that if the transaction was void, the insurance money is still in defendant's hands as insurance money, and free from any lien or claim on the part of the bankrupt or its trustee; that by the course taken the trustee has succeeded in taking the benefit of the transaction and in avoiding its burdens, in violation of the rule that one seeking to rescind must do so in toto. We think this argument involves the misconception that the bankrupt has no concern with the disposition of the insurance money. If, as we are not at all sure, defendant's contention is that through the form of action adopted by the trustee it has lost the opportunity to now apply the insurance money upon the secured instead of the unsecured debt, we think there is no merit in it. Had the remaining mortgaged property realized enough to pay defendant's secured debt, it would gain nothing by now applying instead the repaid insurance money. It may be that as the estate has turned out, and in view of the trustee's recovery of judgment for the preferential payment, defendant would be better off by now making such change of application. This would, of course, release for unsecured creditors generally the bulk of the money applied under the bankruptcy proceedings upon defendant's secured debt. It may also be that, had restitution of the preferential payment been offered or assented to, defendant might have obtained such relief, if desired, either in the bankruptcy proceedings or by appropriate action otherwise. But this question does not require consideration, for not only has restitution never been offered or assented to, but the proceeds of the remaining mortgaged property were, apparently at defendant's instance, applied, under the bankruptcy proceedings, upon its secured claim. If, as has been judicially determined, the transaction was preferential in character, the trustee had the right to sue at law to set it aside; and if the ultimate result is not so favorable to defendant as, under other circumstances, it might have been, defendant has not been legally prejudiced. We think the court did not err in refusing to direct verdict for defendant, or in permitting recovery on the theory that the bankrupt was concerned in the insurance.

[3] It is objected that the common-law action of assumpsit cannot be maintained for the items amounting to $3,227.20, turned over to defendant, for the reason that it does not appear that the latter has received money or money's worth for the property, and that in the absence of such showing trover is the appropriate remedy. It is the general rule in Michigan that assumpsit cannot be maintained against a tort-feasor for the conversion of personal property to his own use, unless he has converted it into money or money's worth. Grinnell v. Anderson, 122 Mich. 533, 537, 81 N. W. 329; Lyon v. Clark, 129

Mich. 381, 384, 88 N. W. 1046. The District Judge was of opinion that there was a conversion of the property into money by the very act of defendant in taking the property "and applying its value in payment of" its unsecured claim. The Supreme Court of Michigan, in Lyon v. Clark, supra, held that assumpsit would not lie under section 67e of the Bankruptcy Act (Comp. St. 1913, § 9651) for property fraudulently conveyed, unless converted into money or money's worth. The question would present no difficulty if we were at liberty to consider as an admission the deposition of defendant's vice president, taken on its behalf in this case, though not introduced in evidence and not a part of the bill of exceptions, although sent up with the record, by stipulation of counsel, at plaintiff's request; for that officer there says of the items in question that "we bought them and paid the purchase price for them and used them in other places."

But disregarding this testimony, and assuming, for the purpose of this opinion, that we are bound by the rule respecting remedy which prevails in the state court, we think the District Judge did not err in the view taken. Lyon v. Clark was not an action to recover a preferential payment, under section 60b, but to recover the value of property fraudulently conveyed. The action there was for the value of the property, and apparently without reference to what defendant paid for it. The action here is not to recover on account of a tort, but merely the amount of a preferential payment, viz., the actual amount at which the defendant received and accepted the property as a payment upon its claim. The transaction, as affects this action, is not essentially different than if the property had been money. It was received at an agreed price, and was to all intents and purposes an actual purchase at such price, the difference being that, instead of the price being paid to the bankrupt and then by it repaid to defendant for application upon the debt, the same result was accomplished by direct application.

[4] Finally, it is contended that the allowance of defendant's claims by the referee is res judicata of the question of preferential payment and transfer. It is well settled that the action of a referee in bankruptcy allowing or disallowing a claim is a judgment, final in the absence of review; and Clendening v. National Bank, 12 N. D. 51, 94 N. W. 901, is cited as holding that the order of a referee permitting a defendant to retain alleged preferences, and allowing its claim for the balance, is an adjudication that the claim so allowed to be retained did not constitute a preference, and was not reviewable in the absence of appeal.

[5] Assuming the correctness of that decision as applied to the facts of the case, we think it has no application to the case before us. It is of the essence of the doctrine of res judicata that the proposition respecting which it is invoked be adjudicated either expressly or by necessary inference. There was no express adjudication that a preference was not created, and the record clearly repels all implication of such determination; for the order allowing defendant's unsecured claim was not made until 30 days after the order directing the trustee to sue, and on the day of its allowance an order was made that the

estate be kept open until the end of the litigation, presumably to provide for the distribution of the recovery, if any.

We find no error in the record, and the judgment of the District Court is affirmed, with costs.