# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### In re STEARNS SALT & LUMBER CO.

### In re HANDY THINGS CO.

#### (Circuit Court of Appeals, Sixth Circuit. July 20, 1915.)

#### No. 2767.

1. BANKRUPTCY ☞482—PREFERENCES—SUITS TO SET ASIDE—ACTIONS—EMPLOYMENT OF COUNSEL.

The referee in bankruptcy, on petition of an unsecured creditor, directed the trustee to sue to set aside a preference by the bankrupt, on condition that the petitioning creditor should indemnify the trustee. The indemnity was given, and in reply to a letter by counsel selected by the creditor, and who claimed compensation from the estate, the trustee informed them that it would be all right to bring suit, and that he desired any action taken by such counsel should be referred to his attorney; it being the trustee's understanding that he was not responsible for any expense of the suit. The trustee's attorney informed counsel that he saw no defects in their declaration, and that the trustee merely desired some one to keep track of the progress of the suit and advise him. The suit was successful. *Held* that, in view of the correspondence and the trustee's acquiescence, counsel must be held to have been employed under sanction of the court and with consent of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. ☞482.]

2. BANKRUPTCY ☞446—PROCEEDINGS TO REVISE—FINDINGS.

On a proceeding to revise in a matter of law an order of the District Court, findings of fact cannot be questioned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ☞446.]

3. BANKRUPTCY ☞482—PREFERENCES—ATTORNEY'S FEES.

An unsecured creditor filed a petition to compel the trustee to sue to set aside a preference by the bankrupt. On a suit instituted by attorneys selected by the unsecured creditor with the consent of the trustee, the preference was set aside and a large sum was made available for payment of the general creditors. *Held*, that the expenses of the suit, as well as the attorney's fees, could be paid out of such general fund, notwithstanding the preferred creditor owned a large majority of the unsecured claims; the suit being for the benefit of the preferred creditor in its capacity as a general creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec Dig. ☞482.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition to Revise Order of the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

In the matter of the petition of the Stearns Salt & Lumber Company to revise an order of the District Court in the case of the Handy Things Company, bankrupt, whereby Cleland & Heald were allowed a claim for legal services and expenses. Order affirmed.

L. W. Harrington, of Grand Rapids, Mich., for petitioner.

H. T. Heald and R. J. Cleland, both of Grand Rapids, Mich., for respondent.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. On December 19, 1914, Cleland & Heald, lawyers, filed a petition in the court below, asking allowance of a claim for fees and expenses in the sum of $5,900.43. The services were rendered and the expenses incurred in a suit of the trustee of the Handy Things Company, bankrupt, against the Stearns Salt & Lumber Company, to recover the proceeds of a preference alleged to have been given by the bankrupt. After a hearing upon the merits of the claim, the referee entered an order allowing $5,000 for the services and $205.-43 for expenses; and this amount, less $474.66 paid by the trustee, or a net balance of $4,730.77, was directed to be paid from the bankrupt estate. Upon petition of the Stearns Salt & Lumber Company for review in the District Court, the order of the referee was affirmed, and the petition for review dismissed. The case is pending here upon a petition of that company to revise in matter of law.

The preference suit mentioned was brought to this court, and is reported as Stearns Salt & Lumber Co. v. Hammond, 217 Fed. 559, 133 C. C. A. 411. The controlling facts of the case appear there and need not be repeated. The Lumber Company, as we shall call it, holds about 71 per cent. of the unsecured liabilities of the bankrupt, and the remaining 29 per cent. is held by other creditors. The recovery in the preference suit amounted, with costs and interest, to $21,895.02. As we understand the argument of counsel for the Lumber Company, their claims in substance are these: (1) The estate has no funds out of which the claim could be paid, except such as were derived through the judgment in the preference suit; (2) the attorneys were not employed at the instance of either the trustee or the Lumber Company, and, since the suit and recovery were against that company, it cannot rightfully be said to have derived any benefit from the litigation, and so cannot be compelled as a general creditor to contribute anything for the services rendered or expenses incurred in the case; and (3) the compensation allowed is so great as to absorb the benefits received by the minority general creditors. We think the first of these claims is true; and it may be conceded that the last one is also true, if the claims secondly mentioned are sustainable. The controversy is thus reducible to a consideration of the claims secondly stated.

[1, 2] Were the present claimants authorized by the trustee to commence and conduct the preference suit? True, it is said by the claim-

ants that the trustee was, throughout, hostile to the suit; and a special proceeding seems to have been necessary to compel him to take action. The referee, after hearing testimony under a petition of an unsecured creditor and the answer of the trustee, authorized and directed the trustee to begin and prosecute the action, on condition that the petitioning creditor should indemnify the trustee against damage and costs; and the indemnity was given. The present claimants represented the petitioning creditor, and what took place between them and the trustee respecting the right of the former to take part in the preference suit appears in correspondence. The trustee desired to have additional counsel engaged in the suit as his attorney; and we think the following letters of February 12 and 24, 1912, fairly represent the ultimate arrangement made between the trustee and the claimants:

Hammond, trustee, to Cleland & Heald:

"I have received a letter from the referee regarding the suit against the Stearns Salt & Lumber Company to recover the $15,000 paid them from the Handy Things Company insurance. It will be all right to bring suit there in the courts at Grand Rapids, as you suggest, also for you to prepare the papers. I have notified my attorney, Mr. M. B. Danaher, to this effect, and you can correspond with him. My expectation is that any action taken by you will first be referred to him, so that he will be in touch with it all; also that the suit will be pushed through as rapidly as possible. I understand, also, that I am not to be responsible for any expense by reason of your conducting the suit."

Danaher to Cleland & Heald:

" * * * I think the petitioning creditors should have the privilege of employing the attorneys of record, who should have the general management of the case. What Mr. Hammond wants is some one to be connected with the case who will keep track of its progress and advise him in case he needs advice. * * * I see no defects in your declaration."

It does not appear that Danaher took active part either in the preparation or the trials of the preference suit; on the contrary, the proofs show that Cleland & Heald actively and laboriously prepared and conducted the litigation throughout. Upon consideration of the entire correspondence, and of the trustee's acquiescence in the claimants' conduct of the suit, we agree with the District Judge in his finding:

"The petitioners were employed under the sanction of the court and with the consent of the trustee to conduct this litigation."

And, under the petition to revise in matter of law, it would have been sufficient to rest this feature of the case upon this finding alone.

[3] The Lumber Company claims, as we have seen, that the attorneys were not employed at its instance. It is hardly necessary to say that the Lumber Company did not take part in securing counsel to conduct the preference suit, any more than it did to procure commencement of the suit; indeed, the company was insisting that it was absolutely entitled to the subject of the preference. The preference consisted of certain insurance money, and specific chattel property accepted at a stated price, all of which the Lumber Company received and applied upon its unsecured claim against the bankrupt company. Stearns Salt & Lumber Company v. Hammond, supra, 217 Fed. at

page 560, 133 C. C. A. 411. The title to this money and property was in the bankrupt company at the time the preference was given, and not in the Lumber Company. The title therefore passed to the trustee at the time of the bankruptcy; and it was in part upon this theory that the trustee's recovery was allowed in the suit. 217 Fed. 561, 562, 563, 564, 133 C. C. A. 411. It is a mistake to suppose that the Lumber Company was compelled to surrender either money or the value of chattel property which it had ever owned. It was required to restore something that already belonged to the bankrupt estate. The effect of the judgment in the suit was to fix the relation of the Lumber Company to the funds now in dispute as simply that of an ordinary general creditor of the bankrupt estate. Page v. Rogers, 211 U. S. 575, 581, 29 Sup. Ct. 159, 53 L. Ed. 332. It is therefore not easy to see why the company's wrong in respect of the preference should of itself amount to a right to escape the ordinary obligation of a general creditor. Although, as the referee in substance found, the unsecured claim of the Lumber Company, which equals 71 per cent. of the total unsecured liabilities of the estate, was proved and allowed (in part as secured by the preference and in part as an unsecured claim) before the preference suit was commenced, still a portion of the language of Mr. Justice Moody in Page v. Rogers forcibly applies (211 U. S. 581, 29 Sup. Ct. 159, 53 L. Ed. 332):

"Now that this litigation has come to an end, and the defendant has been compelled to surrender the preference which he received, he is entitled to prove his claim and to receive a dividend on it upon an equality with other creditors."

Again, in answer to questions certified by this court touching the right of a preferred creditor, who had compulsorily surrendered his preference, to prove his claim as a general creditor, Mr. Justice (now Chief Justice) White said, in Keppel v. Tiffin Savings Bank, 197 U. S. 356, 361, 25 Sup. Ct. 443, 445 (49 L. Ed. 790):

"We think it clear that the fundamental purpose of the provision in question (section 57g of the Bankruptcy Act [section 9641, Comp. St. 1913]) was to secure an equality of distribution of the assets of a bankrupt estate. This must be the case, since, if a creditor, having a preference, retained the preference, and at the same time proved his debt and participated in the distribution of the estate, an advantage would be secured not contemplated by the law. Equality of distribution being the purpose intended to be effected by the provision, to interpret it as forbidding a creditor from proving his claim after a surrender of his preference, because such surrender was not voluntary, would frustrate the object of the provision, since it would give the bankrupt estate the benefit of the surrender or cancellation of the preference, and yet deprive the creditor of any right to participate, thus creating an inequality."

We do not see how liability of the minority general creditors to contribution, and nonliability of the Lumber Company in that behalf, can be reconciled with the principle of equality thus declared in these decisions. However, as we have in effect already stated, a further feature of the contention is that, before a creditor can be compelled to contribute to the expense of a preference suit to the bringing of which he has not assented, it must be shown that he has been benefited, and that the Lumber Company has derived no benefit from the suit. It is said that this question did not arise, for

instance, in the case of Page v. Rogers. The question appears to have been made by counsel in the case, and, though neither this court nor the Supreme Court discussed the question, it seems clear enough that the effect of their conclusions was to compel the creditor losing his preference, to contribute ratably as a general creditor toward payment of counsel fees for services rendered in the preference suit. Page v. Rogers, 149 Fed. 194, 195, 79 C. C. A. 153; Id., 211 U. S. at page 581 near bottom, 29 Sup. Ct. 159, 53 L. Ed. 332. Further, we think the Lumber Company has in fact, as well as in theory, derived benefit from the litigation. This benefit is to be measured by the company's proportionate share (according to its entire 71 per cent. unsecured creditor-interest) in the estate of the bankrupt as it has been augmented by the recovery. Such a benefit is not to be tested by comparing it with the loss practically incurred through inability to hold the preference. This would be to allow the preferred creditor to take advantage of his own wrong; and yet this is the only perceivable theory upon which the preferred creditor, who has been compelled to surrender his preference, can differentiate his situation from that of any of the other unsecured creditors.

These views are not answered by counsel's insistence that the preference suit was adverse to the interest of the Lumber Company. The suit was adverse to the company's asserted interest as absolute owner of the subject of the preference, but not to its interest as a general creditor of the bankrupt estate. Since the company saw fit to claim ownership in property which in truth belonged to the bankrupt estate, it ought not to be heard to say that a suit brought to put an end to this untenable claim was adverse to another and distinct, though undivided, interest which the company could rightfully claim as a general creditor of the estate. It is, of course, not meant by this to decide that a litigant may be required, in a suit brought to deprive him of his own property or other rightful interests, to contribute to the payment of adversary counsel fees.

We may illustrate the distinction intended to be pointed out, by reference to Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940, relied on by counsel for the Lumber Company. The case involved a number of issues; one concerned an alleged partnership fund, which had come into the possession of Hobbs, as assignee in bankruptcy of one of the partners. In a suit brought against the assignee by the other partners (570), it was held that the fund belonged to them (581). The assignee's position in the suit was wholly adversary to the claim of ownership in the plaintiff partners; and, upon the establishment of their title to the fund, the assignee claimed compensation for his services, expenses and attorney's fees, in recovering the fund in the Court of Claims. After finding that he had rendered no services and stating the rule of proportional contribution laid down in Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, it was said in Hobbs v. McLean, 117 U. S. 582, 6 Sup. Ct. 877, 29 L. Ed. 940:

"But where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reim-

bursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate."

If the principle thus announced is not applicable to the facts of the present case, and we think it plainly is not, it is safe to say that all the cases upon which counsel for the Lumber Company base the portion of their argument relating to the claimed adversary nature of the preference suit are irrelevant. Indeed, the adversary feature of that suit is more nearly analogous to that of Page v. Rogers than it is to the adversary character of any decision that has come to our notice; and we are disposed to rest our decision upon the effect of the ruling of this court and of the Supreme Court in that case. We cannot believe that where a defendant has been held, as here, to have rested his defense upon an unlawful claim of ownership, he can subsequently and rightfully insist that his incidental and lawful interest in the subject of the original suit was adversely involved. This would be but a contradiction of the admitted purpose in the original suit to conserve such lawful and incidental interest for the benefit of its real owners; and the circumstance that the defendant in the original suit happens to be one of the class of beneficiaries in whose interest the suit was maintained does not render the benefit he receives any the less obvious.

We have a case, then, in which compensation is sought by claimants for services rendered by them in the commencement and prosecution of the preference suit in the name of the trustee and with his consent. The services so performed resulted in bringing a fund into the court, which is the only source of dividends open to the general creditors of the bankrupt estate. Apart from the matters which have already been considered, there is practically no issue between counsel as to the rule of distribution that should be applied. There is no escape from the rule laid down in Page v. Rogers. We may therefore content ourselves with adding the expression of Mr. Justice Bradley in Trustees v. Greenough, supra, 105 U. S. at page 534, 26 L. Ed. 1157:

"The rule that a party who recovers a fund for the common benefit of creditors is entitled to have his costs and expenses paid out of the fund prevails in bankruptcy cases."

True, it is said that the allowance in the instant case is opposed to the rule laid down by this court in Re Roadarmour, 177 Fed. 379, 100 C. C. A. 611; but the failure of recovery in that case was due to a very different reason from anything existing here, and the recognition there given to the effect of section 64b2 of the Bankruptcy Act is in entire harmony with recovery here.

Another instance of failure of recovery to which allusion is made by counsel, is found in Re Medina Quarry Co., 191 Fed. 815, 816, 112 C. C. A. 329 (C. C. A. 2d Cir.), where again the failure was due to reasons not applicable here; and as indicating that court's views of the scope of the section just alluded to, we may refer to a clause of the opinion:

"And, in our opinion, if the allowances in question cannot be sustained under this statute, they cannot be sustained under any other provision or general power. None is broader."

We cannot think it necessary to analyze the testimony which the claimants offered below in support of their view of the value of the services. The testimony is unusual in its detailed description of the work performed. The value of the work is shown by the opinions of a number of experienced and distinguished lawyers. No opposing testimony was offered. The opinion of the referee discloses a careful consideration of the entire subject, and was approved and adopted by the court below; and since the allowance was satisfactory to a conservative trial judge, it cannot be reasonably questioned.

After examination of the record and assignments, we are convinced that the order should be affirmed, with costs.